SUE ELLEN ESTROFF, Plaintiff v. SROBONA TUBLU CHATTERJEE, Defendant

No. COA07-384

(Filed 6 May 2008)

**1. Child Support, Custody, and Visitation— child custody— domestic partners—focus on legal parent's intentions**

The trial court did not err in a domestic partner's child custody case when applying the test under *Price*, 346 N.C. 68 (1997), by basing its determination in part on defendant biological mother's intentions as to plaintiff domestic partner's role in the children's lives because: (1) the court's focus must be on whether the legal parent has voluntarily chosen to create a family unit and to cede to the third party a sufficiently significant amount of parental responsibility and decision-making authority to create a permanent parent-like relationship with his or her child; (2) the legal parent's intentions are not required to be disclosed to the third party; and (3) the trial court properly considered defendant's intentions at the various stages prior to her decision to terminate her relationship with plaintiff, it was for the trial court to decide the credibility of current expressions of the mother's past

intent in light of the mother's actual conduct, and those credibility determinations cannot be revisited on appeal.

2. **Child Support, Custody, and Visitation— child custody— domestic partners—sufficiency of findings of fact—third-party's burden of proof**

The trial court did not err in a child custody case brought by a domestic partner by determining that plaintiff failed to meet her burden of proof under *Price*, 346 N.C. 68 (1997), even though she contends various testimony and exhibits warranted a ruling in her favor, because: (1) although plaintiff did assign error to a number of findings of fact, many of those assignments of error were not argued in her appellate brief, and thus her objections to those findings are deemed abandoned; (2) plaintiff has not argued how she was harmed by any mislabeling of findings of fact she claims are in fact conclusions of law; (3) plaintiff has not demonstrated that any of the trial court's findings of fact are unsupported by competent evidence, and thus they are binding on appeal; (4) there are no specific set of factors that must be found or analyzed in order for the standard in both *Price* and *Mason*, 190 N.C. App. —— (2008), to be met, and the absence from the trial court's order of the factors identified by plaintiff do not require reversal even though they may be relevant to the question required to be answered by those cases; (5) the findings reflect that defendant did not choose to create a family unit with two parents, did not intend for plaintiff to be a de facto parent, did not allow plaintiff to function fully as a parent, but instead saw plaintiff as a significant loving adult caretaker as modeled on the roles of adults to which defendant was accustomed as a result of her Indian upbringing; (6) the fact that a third party provides caretaking and financial support, engages in parent-like duties and responsibilities, and has a substantial bond with the children does not necessarily meet the requirements of *Price* and *Mason*, (7) the fact that a person has the necessary relationship for standing purposes does not establish, without more, that the requirements of *Price* have been met; and (8) the findings are sufficient to support the trial court's determination that plaintiff did not establish that defendant engaged in conduct inconsistent with her paramount constitutionally-protected status as a parent.

ESTROFF v. CHATTERJEE

[190 N.C. App. 61 (2008)]

3. **Appeal and Error— preservation of issues—parent by estoppel—de facto parent—doctrines not recognized by North Carolina**

Although plaintiff domestic partner contends the trial court erred in a child custody case by concluding that plaintiff domestic partner was neither a parent by estoppel nor a de facto parent, this argument does not need to be addressed because those doctrines, as adopted in other states, have not been recognized in North Carolina and thus are not appropriately considered on appeal.

Appeal by plaintiff from orders entered 17 November 2006 and 20 December 2006 by Judge Joseph Moody Buckner in Orange County District Court. Heard in the Court of Appeals 11 October 2007.

*Lewis, Anderson, Phillips & Hinkle, PLLC, by Susan H. Lewis and Brian C. Johnston, for plaintiff-appellant.*

*Northen Blue, L.L.P., by Carol J. Holcomb and Samantha H. Cabe, for defendant-appellee.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, for amicus curiae Elizabeth MacLean.*

GEER, Judge.

Plaintiff Sue Ellen Estroff appeals from the district court's 17 November 2006 order dismissing her claim for joint custody of two children born to her former domestic partner, defendant Srobona Tublu Chatterjee. This appeal is resolved by the principles set forth in our opinion filed this same date in *Mason v. Dwinnell*, 190 N.C. App. 209, 660 S.E.2d 58 (2008).

As in many custody cases, the struggling of adults over children raises concern regarding the consequences of the rulings for the children involved. Our General Assembly acted on this concern by mandating that disputes over custody be resolved solely by application of the "best interest of the child" standard. *See* N.C. Gen. Stat. § 50-13.2(a) (2007). Nevertheless, our federal and state constitutions, as construed by the United States and North Carolina Supreme Courts, do not allow this standard to be used as between a legal parent and a third party unless the evidence establishes that the legal parent acted in a manner inconsistent with his or her constitutionally-

protected status as a parent.[1] *See Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997). No litmus test or set of factors can determine whether this standard has been met. Instead, the legal parent's "conduct would, of course, need to be viewed on a case-by-case basis . . . ." *Id.* at 83, 484 S.E.2d at 537.

In this case, we hold that the trial court was entitled to conclude, based on the evidence presented at trial and its findings of fact, that Chatterjee did not engage in conduct inconsistent with her constitutionally-protected status. As a result, we affirm the trial court's order dismissing Estroff's custody action.

## Facts

The custody dispute in this case arises from the relationship between Estroff and Chatterjee, who were domestic partners for approximately eight years. The trial court made the following findings of fact.

Estroff is a university professor and Chatterjee is a medical doctor. The two met when Chatterjee, a graduate student at the time, took a seminar taught by Estroff. After Chatterjee completed the seminar, the two women entered into an intimate relationship. At the time the relationship began, Estroff was 44 years old and Chatterjee was 30.

The women lived together from June 1996 until January 2003. In May 1997, the couple bought a house together. Prior to the purchase of the residence, Estroff and Chatterjee signed an agreement establishing each person's rights and responsibilities with respect to the residence and identifying each individual's personal property. Simultaneously, each woman signed a document appointing the other as her attorney-in-fact. Estroff executed a health care power of attorney naming Chatterjee as her attorney-in-fact; Chatterjee did not do the same. Although they never discussed having a commitment ceremony, the two women identified themselves as a couple, and it was well-known by their families and select friends that the women were in an intimate relationship.

In 1997, Chatterjee, who was then 32, decided that she wanted to conceive a child. Estroff had previously chosen not to have children herself. When Chatterjee asked whether Estroff had any objection, Estroff responded that because it was Chatterjee's body, it was her

---

1. We use the phrase "legal parent" to reference both biological and adoptive parents.

ESTROFF v. CHATTERJEE

[190 N.C. App. 61 (2008)]

choice. As the trial court phrased it, "[u]ltimately, [Estroff] agreed that [Chatterjee] could raise a child within the context of their relationship and in their jointly owned home."

Chatterjee first asked a long-time friend to be the sperm donor because it was important to her that her child know and have a relationship with his or her biological father. When the friend declined, Chatterjee decided to use an anonymous sperm donor from a particular sperm bank. While family and friends helped Chatterjee review several profiles, Chatterjee ultimately chose the donor. Among her reasons for selecting the particular donor was the donor's willingness to meet any child when he or she became an adult.

A joint credit card for the couple paid for the purchase of the sperm. Estroff also went to medical appointments with a reproductive specialist and with an obstetrician for pre-natal care. Estroff learned how to perform the artificial insemination and did so when Chatterjee's physician could not.

After a miscarriage, Chatterjee became pregnant in September 2000 with twins. When Chatterjee was required to go on bed rest in March 2001, her mother came to stay with her and became her primary caretaker. During this time, Chatterjee began to feel concerned about her relationship with Estroff. Estroff, however, announced to her colleagues and friends that Chatterjee was going to have twins and that they would be raising the children together. The trial court found that Chatterjee never made similar pronouncements to her colleagues and was uncomfortable when Estroff did so. Nonetheless, Chatterjee did not express her objections or feelings to Estroff.

Before the twins' birth, Estroff requested and Chatterjee agreed to give the children Estroff's last name as their middle names. When it came time for the twins to be born, Estroff and Chatterjee's mother both accompanied Chatterjee to the hospital. Estroff was in the delivery room when the children were born and held them before Chatterjee did. When, however, hospital staff referred to Estroff as the other "mom," Chatterjee objected to Estroff's being called a "mom," and, as a result, Estroff asked the staff to stop referring to her as a "mom."

Because the children were born prematurely, they required around-the-clock care. When they first came home from the hospital, both Chatterjee's mother and Estroff helped Chatterjee care for the twins. After Chatterjee's mother left, Estroff and Chatterjee shared

the daily care of the children. In addition, in the early days, Estroff's family came to help care for the children.

Estroff took the children to university events and held the children out as her own. Estroff helped financially support and care for the children. The women jointly interviewed applicants for a nanny and decided who to hire. Chatterjee, however, reminded Estroff that Estroff was not the mother of the children and that Chatterjee was and always would be their only mother.

In early 2002, Chatterjee finally decided to terminate her relationship with Estroff and began looking for a separate residence. After moving to a new house in January 2003, approximately 18 months after the birth of the twins, Chatterjee worked with a parental coach to develop a structured schedule so that the children were in Estroff's custody approximately half of every week. According to the trial court's findings, "[i]t was [Chatterjee's] intent to gradually reduce the time the children would spend with [Estroff] as they became settled and at ease in their new home."

In the spring of 2005, Chatterjee told Estroff that she would no longer be allowed to spend time with the twins more than one night a week. In response, on 26 May 2005, Estroff sued seeking joint custody, recognition of her parental status, and reinstatement of the original visitation schedule. Chatterjee subsequently moved to dismiss for lack of standing and failure to state a claim. The trial court denied the motion to dismiss in a 3 August 2005 order. Beginning on 17 April 2006, the trial court held a two-week trial and ultimately dismissed Estroff's claims.

The trial court entered its order on 17 November 2006. With respect to Estroff's status, the trial court found:

While [Estroff] has played a unique and special role in the lives of [Chatterjee's] children, she is neither a biological nor an adoptive parent of [the twins]. [Estroff] is not a "parent by estoppel" nor a "de facto parent". There was never a legal nor contractual written or verbal agreement between [Estroff] and [Chatterjee] that [Estroff] was a parent, custodian or legal guardian. Moreover, [Estroff] and [Chatterjee] never discussed entering into a parenting or custodial agreement or filing a friendly lawsuit to attempt to formally provide [Estroff] with parental or custodial rights. [Chatterjee] never would have agreed to such a request if it had been made by [Estroff]. [Chatterjee] would never have agreed to

**ESTROFF v. CHATTERJEE**

[190 N.C. App. 61 (2008)]

bestow on [Estroff] or anyone else any parental or custodial rights with regard to her children.

With respect to Chatterjee, the trial court found that she had "not conveyed or relinquished custody or parental status to [Estroff] by her conduct and/or by her actions."

The court then concluded that "[Chatterjee], as the biological parent of [the twins] has a constitutionally-protected right to the care, custody, and control of her children under the Fourteenth Amendment to the Constitution of the United States." Further, according to the trial court, "[Estroff] has failed to establish by clear and convincing evidence that [Chatterjee] has engaged in conduct inconsistent with her constitutionally-protected status as a parent or otherwise forfeited her constitutionally-protected status as a parent."

On 27 November 2006, Estroff filed a motion for a new trial and/or relief from the judgment. That motion primarily argued that a new trial was warranted based on misconduct by Chatterjee. According to the motion, although Chatterjee had "repeatedly and consistently represent[ed] to the Court throughout the proceedings until June 5, 2006 that she would never cut off contact between the Minor Children and [Estroff], [she] cut off all contact between the Minor Children and [Estroff]" once the trial court indicated it was dismissing the case. The trial court denied the motion in an order filed 20 December 2006. Estroff timely appealed from both the 17 November 2006 order and the 20 December 2006 order.

## Discussion

Estroff primarily challenges the trial court's ultimate determination, pursuant to *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997), that Chatterjee did not engage in conduct inconsistent with her constitutionally-protected status as a parent. As we recognized in *Mason*, *Price* holds that the General Assembly's "best interest of the child" standard, N.C. Gen. Stat. § 50-13.2(a), has constitutional limitations. 190 N.C. App. at 219, 660 S.E.2d at 65. Our Supreme Court determined in *Price* that in a custody dispute between a legal parent and a third party, the following test applies in determining whether the "best interest of the child" standard governs:

> [T]he parent may no longer enjoy a paramount status if his or her conduct is inconsistent with this presumption [that he or she will act in the best interest of the child] or if he or she fails to shoulder the responsibilities that are attendant to rearing a child. If a

natural parent's conduct has not been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent would offend the Due Process Clause.

346 N.C. at 79, 484 S.E.2d at 534. When a trial court finds conduct inconsistent with the parent's constitutionally-protected status, "custody should be determined by the 'best interest of the child' test mandated by statute." *Id.*, 484 S.E.2d at 535.

This determination must be based on clear, cogent, and convincing evidence. *Adams v. Tessener*, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001). Under our standard of review of custody proceedings, "the trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Owenby v. Young*, 357 N.C. 142, 147, 579 S.E.2d 264, 268 (2003). Whether these findings support the trial court's conclusions of law is reviewable de novo. *Hall v. Hall*, 188 N.C. App. 527 530, 655 S.E.2d 901, 904 (2008).

I

[1] As an initial matter, Estroff contends that the trial court erred as a matter of law, when applying the *Price* test, by basing its determination in part on Chatterjee's "intentions" as to Estroff's role in the children's lives. According to Estroff, in making the determination mandated by *Price*, courts should apply the "well settled" principle of civil legal responsibility "that it is not a party's intention that controls whether he is to be held legally accountable, but his conduct and the reasonably foreseeable consequences of his conduct." This case is not, however, a contract or tort action, but rather involves a legal parent's "constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child." *Price*, 346 N.C. at 79, 484 S.E.2d at 534.

Estroff further argues, however, that *Price* supports her view that only manifested intentions are relevant. She asserts that, in *Price*, "the Supreme Court held that the mother needed to have made it clear at the time she left the child with the Plaintiff that the placement was temporary." (Emphasis omitted.) We disagree with Estroff's reading of *Price*. To the contrary, the Court noted that the biological mother "*chose* to rear the child in a family unit with plaintiff being the child's *de facto* father." *Id.* at 83, 484 S.E.2d at 537 (emphasis added). "Choice" is a volitional factor that necessarily incorporates a person's intent.

In addition, although the mother in *Price* had relinquished custody to the plaintiff for a period of time, the Court observed that the testimony was disputed "whether defendant's voluntary relinquishment of custody to plaintiff was intended to be temporary or indefinite and whether she informed plaintiff and the child that the relinquishment of custody was temporary." *Id.* Thus, both conduct and intent are relevant. The language referenced by Estroff stated that if a parent finds it necessary to relinquish custody of his or her child to a third party, "to preserve the constitutional protection of parental interests in such a situation, the parent should notify the custodian upon relinquishment of custody that the relinquishment is temporary . . . ." *Id.* This recommendation—in effect, setting out the better practice for parents—does not require that only conduct and manifested intentions be considered.

In our decision in *Mason*, we held that the specific question to be answered in cases such as this one is: "Did the legal parent act inconsistently with her fundamental right to custody, care, and control of her child and her right to make decisions concerning the care, custody, and control of that child?" *Mason*, 190 N.C. App. at 222, 660 S.E.2d at 67. We believe that in answering this question, it is appropriate to consider the legal parent's intentions regarding the relationship between his or her child and the third party during the time that relationship was being formed and perpetuated.

Indeed, in *Mason*, we pointed out that the trial court had found that the legal parent and her domestic partner had "intentionally" taken steps to identify Mason as a parent of the child and that the legal parent "intended that [the] parent-like relationship [between her partner and child] be a permanent relationship for her child." *Id.* at 223, 660 S.E.2d at 67. We also concluded that the trial court properly considered a parenting agreement executed by the couple because it "constitute[d] admissions by [the legal parent] regarding her intentions and conduct in creating a permanent parent-like relationship between [her partner] and her biological child." *Id.* at 224, 660 S.E.2d at 68.

Our analysis of the trial court's findings of fact stressed:

> While this case does not involve the biological mother's leaving the child in the care of a third person, we still have the circumstances of [the mother's] *intentionally* creating a family unit composed of herself, her child and, to use the Supreme Court's words, a "*de facto* parent." [*Price*, 346 N.C. at 83, 484 S.E.2d at

537]. . . . Even though [the mother] did not completely relinquish custody, she fully shared it with [her partner], including sharing decision-making, caretaking, and financial responsibilities for the child. And, in contrast to *Price*, the findings establish that [the mother] *intended*—during the creation of this family unit—that this parent-like relationship would be permanent, such that she "induced [her partner and the child] to allow that family unit to flourish in a relationship of love and duty with no expectations that it would be terminated." *Id.* [at 83, 484 S.E.2d at 537.]

*Id.* at 225-26, 660 S.E.2d at 68-69 (emphasis added). We concluded that once a parent chooses to forego as to a third party his or her constitutionally-protected parental rights, he or she "cannot now assert those rights in order to unilaterally alter the relationship between her child and the person whom she transformed into a parent." *Id.* at 227, 660 S.E.2d at 70.

Thus, as *Mason* holds, the court's focus must be on whether the legal parent has voluntarily chosen to create a family unit and to cede to the third party a sufficiently significant amount of parental responsibility and decision-making authority to create a permanent parent-like relationship with his or her child. *Id.* at 226, 660 S.E.2d at 69. The parent's intentions regarding that relationship are necessarily relevant to that inquiry. By looking at both the legal parent's conduct and his or her intentions, we ensure that the situation is not one in which the third party has assumed a parent-like status on his or her own without that being the goal of the legal parent.

In *V.C. v. M.J.B.*, 163 N.J. 200, 224, 748 A.2d 539, 552, *cert. denied*, 531 U.S. 926, 148 L. Ed. 2d 243, 121 S. Ct. 302 (2000), the New Jersey Supreme Court applied an analysis similar to that in *Mason* in concluding that a third party may be entitled to custody if "the legal parent ceded over to the third party a measure of parental authority and autonomy and granted to that third party rights and duties vis-a-vis the child that the third party's status would not otherwise warrant." With respect to this determination, the court concluded that "the intent of the legally recognized parent is critical." *Id.*

We agree with the New Jersey Supreme Court that the focus must, however, be on the legal parent's "intent during the formation and pendency of the parent-child relationship" between the third party and the child. *Id.* Intentions after the ending of the relationship between the parties are not relevant because "the right of the legal parent '[does] not extend to erasing a relationship between her part-

ner and her child which she voluntarily created and actively fostered simply because after the party's separation she regretted having done so.'" *Id.* at 224-25, 748 A.2d at 552 (quoting *J.A.L. v. E.P.H.*, 453 Pa. Super. 78, 92-93, 682 A.2d 1314, 1322 (1996)).

Estroff also complains that the sole evidence to support the trial court findings of fact regarding Chatterjee's intentions was Chatterjee's own testimony and that none of those intentions were disclosed to Estroff. Our authority does not, however, require that the intentions be disclosed to the third party, although if they were, it might make resolution of the *Price* issue easier, as *Price* pointed out. Estroff's emphasis on the harm to her from the lack of disclosure—including her concerns about Chatterjee's deceit towards her and Chatterjee's "us[ing]" her—reflects Estroff's mistaken belief that principles of civil liability should be imported into the custody context. Estroff's approach implies that she has rights and has suffered harm, but harm to the third party is immaterial to the standard set forth in *Price* and further discussed in *Mason*.

Estroff also argues that "there is ample evidence to contradict [Chatterjee's] statements of her intentions . . . ." Even if so, such evidence simply presented questions of credibility and weight for the trial court to resolve. *Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994). We, therefore, hold that the trial court properly considered Chatterjee's intentions at the various stages prior to her decision to terminate her relationship with Estroff. It was for the trial court to decide the credibility of current expressions of the mother's past intent in light of the mother's actual conduct. We cannot revisit those credibility determinations on appeal.

## II

[2] Estroff next argues that the trial court's determination that she failed to meet her burden of proof under *Price* is not supported by the evidence, citing testimony and exhibits that she asserts warrant a ruling in her favor. Findings of fact are, however, binding on appeal—regardless of the sufficiency of the evidence—unless assigned as error. *Koufman v. Koufman*, 330 N.C. 93, 98, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."). Although Estroff did assign error to a number of findings of fact, many of those assignments of error were not then argued in her appellate brief. Her objections to those findings are, therefore, deemed abandoned. N.C.R. App. P. 28(b)(6)

("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

Estroff does argue in her brief that no evidence supports the trial court's finding that "[Estroff] agreed that [Chatterjee] could raise a child within the context of their relationship and in their jointly owned home." While Estroff urges. that this finding "attributes to [Estroff] *her agreement* to view [Chatterjee] as a single parent," we cannot accept that construction of the court's finding. We believe a more reasonable reading of the finding is that it was intended to convey that although the couple did not make a joint decision to have a child, Estroff did not object to Chatterjee's raising the child while the women continued to have a relationship. The evidence may not explicitly support this finding, but it is a reasonable inference from the evidence as to Chatterjee's conversations with Estroff regarding Chatterjee's decision to have a child. The trial court is entitled to draw all reasonable inferences from the evidence. *NationsBank of North Carolina v. Baines*, 116 N.C. App. 263, 269, 447 S.E.2d 812, 815 (1994) (holding that trial court decides what reasonable inferences may be drawn from the evidence, and appellate court may not substitute its view for that of the trial court).

Estroff next challenges findings of fact that actually appear favorable to her. Finding of fact 22 states that "[Chatterjee] needed [Estroff's] help and depended on it." Finding of fact 24 states: "[Chatterjee] was grateful for [Estroff's] presence and her help in the care of the children." Third, finding of fact 33 states: "[Estroff] supported [Chatterjee] in many ways both before and during the pregnancy." Estroff's argument as to these findings is based on her belief that the trial court was portraying Estroff as only a "handmaiden" and "helper" to Chatterjee rather than a joint caretaker of the children. We do not believe this is a necessary inference from the findings; nor is such an inference consistent with other findings of the trial court.

Finally, Estroff objects to the trial court's findings of fact that (1) Estroff was not a parent by estoppel or a *de facto* parent, (2) Chatterjee had not voluntarily relinquished custody of her children, and (3) Chatterjee had not conveyed or relinquished custody or parenthood status to Estroff by her conduct or her actions. Estroff argues only that these assertions are in fact conclusions of law. While the first statement may be a conclusion of law, we believe the other two are mixed questions of law and fact. In any event, Estroff has not

argued how she was harmed by any mislabeling of these findings. *See In re Faircloth*, 153 N.C. App. 565, 569, 571 S.E.2d 65, 68 (2002) (deeming the mislabeling of findings of fact and conclusions of law "not fatal" to the trial court's order).

Thus, Estroff has not demonstrated that any of the trial court's findings of fact were unsupported by competent evidence. Those findings are, therefore, binding on appeal. The question remains whether the findings are sufficient to support the trial court's conclusion that Estroff failed to establish that Chatterjee engaged in behavior inconsistent with her constitutionally-protected status as a parent.

Estroff lists in her brief eight findings that she contends were necessary in order to reach the trial court's conclusion, but were not made. Estroff argues that in order to rule in favor of Chatterjee, the trial court was required to find the following: (1) that there was no parent-child bond, (2) that the children were not attached to Estroff, (3) that Estroff was not involved in performing parent-like duties and responsibilities with the children, (4) that Estroff did not provide substantial financial support and caretaking for the children, (5) that Estroff was not viewed as a co-parent by family and friends, (6) that Estroff was not seen by the children as one of their parents, (7) that Chatterjee had not engaged in "any conduct inconsistent with her claim to exclusive control of the children," and (8) that Estroff was not viewed as a co-parent by professionals and medical providers. Estroff then argues that "[t]here were no such findings because they could not have been made. The evidence was overwhelmingly to the contrary."

We pointed out in *Mason* that *Price* "declined to specify the universe of conduct that would 'constitute conduct inconsistent with the protected status parents may enjoy,' but rather directed that a parent's conduct 'be viewed on a case-by-case basis.' " *Mason*, 190 N.C. App. at 218, 660 S.E.2d at 64 (quoting *Price*, 346 N.C. at 79, 484 S.E.2d at 534). There is thus no specific set of factors that must be found or analyzed in order for the standard in *Price* and *Mason* to be met. While the factors identified by Estroff may be relevant to the question required to be answered by *Price* and *Mason*, their absence from the trial court's order in this case does not require reversal.

Here, the trial court's findings establish that Chatterjee did not jointly decide with Estroff to create a family, but rather made the decision on her own and asked only if Estroff had any objection to sharing her home with children. Chatterjee chose the sperm donor

herself based on her desire that the donor be willing to meet the children when they became adults. According to the trial court's findings of fact, Chatterjee—in contrast to Estroff—did not announce to others that the couple was going to raise the twins together. Then, after the twins were born and while the couple lived together, Chatterjee objected to Estroff's being called the children's "mom" and reminded Estroff "that [Estroff] was not the mother of the children; that she, [Chatterjee,] was and always would be their only mother." Finally, as the trial court found, the parties never entered into any written or verbal agreement that Estroff was a parent, custodian, or legal guardian. Indeed, the couple never discussed entering into a parenting or custodial agreement or taking other action to provide Estroff with parental or custodial rights.

The trial court's findings reflect that Chatterjee did not choose to create a family unit with two parents, did not intend that Estroff would be a "de facto parent," *Price*, 346 N.C. at 83, 484 S.E.2d at 537, and did not allow Estroff to function fully as a parent. Instead, according to the trial court's findings, Chatterjee saw Estroff as "a significant, loving adult caretaker but not as a parent." As the trial court found, this role was modeled on the roles of adults to which Chatterjee was accustomed as a result of her Indian upbringing.

Consistent with that role, the trial court found that Estroff assisted in the care of the children, financially supported the children, and joined with Chatterjee in interviewing and hiring the children's nanny. Contrary to Estroff's contention, these facts do not preclude the trial court's ultimate determination in Chatterjee's favor. The fact that a third party provides caretaking and financial support, engages in parent-like duties and responsibilities, and has a substantial bond with the children does not necessarily meet the requirements of *Price* and *Mason*. Those factors could exist just as equally for a person such as the plaintiff in *Mason* (who was found to have met the standard in *Price*) as for a step-parent or simply a significant friend of the family, who might not meet the *Price* standard.

These facts establish the existence of a relationship "in the nature of a parent and child relationship" and are sufficient to support a finding of standing to bring a custody action. *Ellison v. Ramos*, 130 N.C. App. 389, 394, 502 S.E.2d 891, 894, *appeal dismissed and disc. review denied*, 349 N.C. 356, 517 S.E.2d 891 (1998). But, simply because a person has the necessary relationship for standing purposes does not establish without more that the requirements of *Price* have been met. In *Seyboth v. Seyboth*, 147 N.C. App. 63, 68, 554 S.E.2d 378, 382

ESTROFF v. CHATTERJEE

[190 N.C. App. 61 (2008)]

(2001), this Court stressed: "Regardless of the compelling and significant relationship between the stepfather and ex-stepchild in the case *sub judice*, the trial court could not grant the stepfather visitation solely based on the best interest analysis." Further evidence and findings—beyond just the parent-like relationship and strong parent-child bond between the stepfather and child—were necessary to comply with the standard in *Price. Id.* at 68-69, 554 S.E.2d at 382.[2]

As the Pennsylvania Supreme Court has stated, "[w]hat is relevant . . . is the method by which the third party gained authority" to assume a parent-like status and perform parental duties. *T.B. v. L.R.M.*, 567 Pa. 222, 232, 786 A.2d 913, 919 (2001). Thus, the focus is not on what others thought of the couple or what responsibility Estroff elected to assume, but rather whether Chatterjee "cho[se] to cede to [Estroff] a sufficiently significant amount of parental responsibility and decision-making authority to create a permanent parent-like relationship with her child." *Mason*, 190 N.C. App. at 226, 660 S.E.2d at 69.

The trial court's findings of fact—although made without benefit of our opinion in *Mason*—essentially decide that Chatterjee did not choose to do so. The findings are, therefore, sufficient to support the trial court's determination that Estroff did not establish that Chatterjee engaged in conduct inconsistent with her paramount constitutionally-protected status. *Compare id.* at 223-25, 660 S.E.2d at 67-70 (holding *Price* standard met when couple jointly decided to create family; intentionally acted to identify third party as parent (through multiple means); mother repeatedly identified partner publicly as child's parent; mother stipulated that couple and child lived together as family unit; mother shared her decision-making authority as to child with partner; mother signed medical power of attorney allowing partner to participate in child's medical decisions; and mother entered into parenting agreement providing that partner was a *de facto* parent and setting out provisions for continued custody by partner if couple's relationship ended).

---

2. We note, in passing, that Estroff has also argued that the trial court erred by finding that she did not have standing to seek custody in this case. The trial court, however, in its 3 August 2005 order, denied Chatterjee's motion to dismiss for lack of standing and, in its 17 November 2006 order, concluded that it "ha[d] personal *and subject matter jurisdiction*." (Emphasis added.) *See Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 ("If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim."), *disc. review denied*, 359 N.C. 632, 613 S.E.2d 688 (2005). Thus, the trial court necessarily concluded twice that Estroff had standing, and there is no need for us to address the issue.

**[3]** Finally, Estroff argues that the trial court erred in concluding that she was neither a parent by estoppel nor a *de facto* parent because the court failed to make the necessary findings of fact to support that conclusion. We need not address this argument since those doctrines, as adopted in other states, have not yet been recognized in North Carolina and are not appropriately considered in this appeal.

During the oral argument in this case, Estroff's counsel represented that her client was not seeking parental status, but rather was only seeking visitation. Our Supreme Court has set out in *Price* the standard, under the federal and state constitutions, for determining whether a third party is entitled to custody, including visitation. This Court, in light of *Price* and subsequent Supreme Court decisions following *Price*, does not have authority to adopt a different standard as to custody. *See Seyboth*, 147 N.C. App. at 68, 554 S.E.2d at 382 (declining to adopt approach towards stepparents employed in other states because "[o]ur case law as enunciated in *Peterson* and refined in *Price* . . . is very clear"). Accordingly, we affirm the trial court's order of 17 November 2006.[3]

Affirmed.

Judges BRYANT and STEELMAN concur.

---

, 3. Although Estroff appealed from the trial court's denial of her motion for a new trial, she has not addressed that order on appeal.