REBECCA DAVIS, Plaintiff v. MARGARET SWAN, Defendant

No. COA09-321

(Filed 17 August 2010)

**Child Custody and Support— custody—same sex family—best interest of child standard**

Uncontested findings supported the trial court's conclusion that the biological parent of a child born to a same sex couple had acted inconsistently with her constitutionally protected exclusive parental status in creating a family with her partner. The best interest of the child standard was appropriately applied.

Appeal by defendant from order entered 8 October 2008 by Judge Gary S. Cash in Superior Court, Buncombe County. Heard in the Court of Appeals 29 September 2009.

*Sharon Thompson Law Group, by Sharon A. Thompson; and Patterson Harkavy LLP, by Burton Craige and Narendra K. Ghosh, for plaintiff-appellee.*

*Northen Blue, L.L.P., by Carol J. Holcomb, Vicki L. Parrott, and Samantha H. Cabe, for defendant-appellant.*

WYNN, Judge.

Defendant Margaret Swan appeals from an order granting Plaintiff Rebecca Davis joint legal custody and secondary physical custody of Swan's biological child ("minor child"). Swan argues that the trial court erred by applying the best interest standard to the child custody dispute between the parties. Because the record shows that

Swan acted inconsistently with her constitutionally protected right to exclusive care and control of the minor child, we affirm the trial court's decision to apply the best interest of the child standard.[1]

On 21 September 2007, Davis filed a complaint seeking joint legal and physical custody of the minor child and an order regarding child support. Swan, the minor's biological mother, filed a motion to dismiss, answer, and counter claim for custody and attorney's fees on 19 December 2007. The trial court conducted a hearing on 21 and 22 July 2008, and entered an order on 8 October 2008 containing the following relevant findings of fact:

1. Plaintiff and Defendant had a personal relationship from October 1996 to April 2005. The parties considered themselves committed domestic partners, purchased a home together, and resided there from February 1999 until May 2005.

2. The parties decided to have a child together and began actively pursuing parenthood in the Spring of 2000. They decided Defendant would be the one to get pregnant for several reasons, including but not limited to, the fact that Defendant had the better health insurance, she wanted to be a stay-at-home parent, and Defendant was in good health.

3. . . . Defendant became pregnant in the Fall of 2003 after a second in vitro fertilization attempt.

4. Plaintiff was involved with Defendant in her attempts to get pregnant, including reviewing possible donors, going to most doctor visits, being there with Defendant during various insemination procedures and two in vitro fertilization procedures, all of which occurred over an approximately three year period.

5. Plaintiff went with Defendant to every one of her doctor appointments while Defendant was pregnant, as well as attending a Bradley birth class and breast feeding class with Defendant.

6. A baby shower was given on April 24, 2004 at the parties' residence for both Defendant and Plaintiff.

7. On May 28, 2004, Defendant gave birth to a baby girl whom the parties chose to name [minor child] SWAN-DAVIS, a name that combined both parties' last names.

1. *Mason v. Dwinnell*, 190 N.C. App. 209, 226, 660 S.E.2d 58, 69 (2008).

DAVIS v. SWAN

[206 N.C. App. 521 (2010)]

8. Plaintiff was at the hospital with Defendant during [minor child]'s delivery and birth.

9. Defendant and Plaintiff sent out birth announcements announcing "the birth of our daughter" and stating that the two . . . were the "proud parents."

10. The minor child calls Plaintiff "Mom" and she calls Defendant "Mama."

11. The parties together planned a nursery for [minor child] and Plaintiff's mother made the curtains and other things for the nursery.

12. Since [minor child]'s birth, Plaintiff has attended a baby sign language class, swimming, soccer and gymnastics classes, and most of [minor child]'s pediatrician and dentist appointments.

13. Defendant admits that Plaintiff was involved in the day-to-day parenting of [minor child] since her birth until the date of the parties' separation and that the parties shared decision-making, care-taking and financial responsibilities for [minor child] from her birth until the parties separated, to the extent that Plaintiff was not at work and was available to do so.

14. In 2004 Defendant appointed Plaintiff as guardian of the minor child in her Last Will and Testament.

15. In 2006, after the parties' [sic] separated, Defendant signed an Authorization to Consent to Health Care for Minor and a Power of Attorney for Child Care.

16. Plaintiff has provided financial assistance to Defendant following the separation of the parties for the minor child's extracurricular activities.

17. Plaintiff made the arrangements for, filled out the paperwork and paid for [minor child]'s preschool, swim classes, soccer and gymnastics.

18. Defendant admits that both Defendant and Plaintiff held themselves out to the community as both being parents to [minor child] prior to the parties' separation.

19. Defendant helped [minor child] make Mother's Day cards for Plaintiff in 2006 and 2007.

. . . .

21. The parents of both parties were recognized by the parties and others as the grandparents of the minor child.

22. Both parties shared household expenses and child expenses and agreed that Defendant would claim the minor child as a dependent for tax purposes.

23. The parties did not sign a Parenting Agreement.

24. In April 2004 they executed powers of attorney and wills. In her will, Defendant named Plaintiff as guardian for the minor child.

25. Plaintiff has paid for the minor child's attendance at Asheville Montessori School.

26. The parties jointly decided to create a family and intentionally took steps to identify Plaintiff as a parent of the minor child.

27. Defendant encouraged, fostered and facilitated the emotional and psychological bond between Plaintiff and the minor child up until the parties' separation.

    . . . .

32. Defendant testified that, prior to and at the time of [minor child]'s birth, she assumed both of the parties would be parents to [minor child].

33. Since June 2005[,] when the parties physically separated, they have shared physical custody of their daughter. From June 2005 through December 2007, Plaintiff had physical placement of [minor child] for an average of eleven overnights per month.

34. In September 2007, Defendant referred to Plaintiff as [minor child]'s "other mother" on her page in MySpace.com.

Based on these findings, the trial court made the following conclusions of law with respect to custody:

2. . . . . [T]he Court concludes that Defendant made the choice, with respect to Plaintiff's relationship to the minor child, to act in a manner inconsistent with her constitutionally-protected right to custody, care, and control of the minor child and her right to exclusively make decisions concerning said child.

3. The Court's determination that Defendant has acted in a manner inconsistent with her constitutionally-protected parental rights is supported by clear and convincing evidence.

4. Since the Court concludes that Defendant has acted in a manner inconsistent with her constitutionally-protected parental rights, the standard this Court should apply, and has applied, to determine custody is the "best interest of the child."

. . . .

6. It is in the best interests of the minor child that the parties have joint legal custody, that Defendant have primary physical custody, and Plaintiff have secondary physical custody.

Further, the trial court awarded Swan and Davis joint legal custody of the minor child—Swan primary physical custody, and Davis secondary physical custody.

Swan appeals, arguing that Davis failed to demonstrate by clear and convincing evidence that Swan acted inconsistently with her constitutionally protected status as the minor child's legal parent. Swan further argues that the trial court's findings of fact do not support its conclusion that Swan acted inconsistently with her constitutionally protected right to exclusive care and control of the minor child, in violation of her parental rights under the 9th and 14th Amendments to the U.S. Constitution.

"In child custody cases, where the trial judge has the opportunity to see and hear the parties and witnesses, the trial court has broad discretion and its findings of fact are accorded considerable deference on appeal." *Westneat v. Westneat*, 113 N.C. App. 247, 250, 437 S.E.2d 899, 900-01 (1994) (quoting *Smithwick v. Frame*, 62 N.C. App. 387, 392, 303 S.E.2d 217, 221 (1983)). "[T]he trial court's findings of fact are conclusive if there is evidence to support them, even though the evidence might sustain a finding to the contrary." *Raynor v. Odom*, 124 N.C. App. 724, 729, 478 S.E.2d 655, 658 (1996). Whether the findings of fact support the trial court's conclusions of law is reviewed *de novo. Hall v. Hall*, 188 N.C. App. 527, 530, 655 S.E.2d 901, 904 (2008).

In *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997), our Supreme Court established that the best interest of the child standard applies in a custody dispute between a legal parent and a non-parent when clear and convincing evidence demonstrates that the legal parent's conduct has been inconsistent with his or her constitutionally protected status. *Id.* at 79, 484 S.E.2d at 534. The Court reasoned:

A natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child. Therefore, the parent may no longer enjoy a paramount status if his or her conduct is inconsistent with this presumption or if he or she fails to shoulder the responsibilities that are attendant to rearing a child.

*Id.* (citations omitted). Further, the Court explained that while conduct warranting termination of parental rights[2] was clearly conduct inconsistent with constitutionally protected status, "[o]ther types of conduct, *which must be viewed on a case-by-case basis*, can also rise to this level so as to be inconsistent with the protected status of natural parents." *Id.* at 79, 484 S.E.2d at 534-35 (emphasis added).

Also, the trial court must consider the intent of the legal parent, in addition to her conduct. "[I]t is appropriate to consider the legal parent's intentions regarding the relationship between his or her child and the third party during the time that relationship was being formed and perpetuated." *Estroff v. Chatterjee*, 190 N.C. App. 61, 69, 660 S.E.2d 73, 78 (2008).

Intentions after the ending of the relationship between the parties are not relevant because the right of the legal parent [does] not extend to erasing a relationship between her partner and her child which she voluntarily created and actively fostered simply because after the party's separation she regretted having done so.

*Id.* at 70-71, 660 S.E.2d at 79 (citations and internal quotation marks omitted).

In *Mason v. Dwinell*, 190 N.C. App. 209, 660 S.E.2d 58 (2008), this Court applied the analysis articulated in *Price* to review a trial court order awarding permanent joint legal and physical custody to the defendant, the minor child's biological parent, and the plaintiff, her former domestic partner. *Id.* at 211, 660 S.E.2d at 60. On review, this Court held that the following findings of fact supported the trial court's conclusion that the biological parent acted inconsistently with her constitutionally protected right to exclusive care and control of the minor child:

---

2. N.C. Gen. Stat. § 7B-1111 (2007) sets forth the statutory grounds for the termination of parental rights, including abuse, neglect and abandonment.

(1) both plaintiff and defendant jointly decided to create a family unit; (2) defendant intentionally identified plaintiff as parent; (3) the sperm donor was selected based upon physical characteristics similar to those of plaintiff; (4) the surname of plaintiff was used as one of the child's names; (5) plaintiff participated in the pregnancy and the birth of the child; (6) there was a baptism ceremony where both plaintiff and defendant were identified as parents; (7) plaintiff was identified as a parent on school forms; (8) they functioned together as a family unit for four years; (9) after the relationship between plaintiff and defendant ended, the defendant allowed plaintiff the functional equivalent of custody for three years; (10) defendant encouraged, fostered, and facilitated an emotional and psychological bond between plaintiff and the child; (11) plaintiff provided care and financial support for the child; (12) the child considered plaintiff to be a parent; (13) plaintiff and defendant shared decision-making authority with respect to the child; (14) plaintiff was [sic] a medical power of attorney for the child; (15) the parties voluntarily entered into a parenting agreement; and (16) defendant intended to create between plaintiff and the child a permanent parent-like relationship.

*Heatzig v. Maclean*, 191 N.C. App. 451, 459-60, 664 S.E.2d 347, 353-54 (summarizing findings of fact in *Mason*, 190 N.C. App. at 222-23, 660 S.E.2d at 67) *appeal dismissed, review denied*, 362 N.C. 681, 670 S.E.2d 564 (2008). Analogizing the facts of *Mason* to those in *Price*, this Court stated:

While this case does not involve the biological mother's leaving the child in the care of a third person, we still have the circumstances of [a parent] intentionally creating a family unit composed of herself, her child and, to use the Supreme Court's words, a *"de facto* parent." . . . [T]he findings establish that [the legal parent] intended—during the creation of this family unit—that this parent-like relationship would be permanent, such that she "induced [non-parent and minor] to allow that family unit to flourish in a relationship of love and duty with no expectations that it would be terminated."

*Mason*, 190 N.C. App. at 225-26, 660 S.E.2d at 68 (quoting *Price*, 346 N.C. at 83, 484 S.E.2d at 537).

This Court in *Estroff v. Chatterjee*, however, affirmed an order dismissing a non-parent plaintiff's claim for joint custody of the two children born to the defendant (her former partner) and the children's

legal parent. This Court held that the trial court's findings of fact "reflect[ed] that [the legal parent] did not choose to create a family unit with two parents, did not intend that [the plaintiff] would be a '*de facto* parent,' . . . and did not allow [the plaintiff] to function fully as a parent." *Estroff*, 190 N.C. App. at 74, 660 S.E.2d at 81. Additionally, this Court stated that the following findings of fact by the trial court supported dismissal: (1) the defendant made her own decision to have a child, chose the sperm donor independently, "and asked only if [the plaintiff] had any objection to sharing her home with children"; (2) the defendant did not hold out to others that she and plaintiff were planning to raise the children together; (3) the defendant objected to others referring to plaintiff as the children's "mom" and told the plaintiff "that she, [plaintiff,] was and always would be their only mother"; and (4) the parties never discussed or entered into any agreements or took any actions to confer on the defendant parental or custodial rights. *Id.* at 74, 660 S.E.2d at 81.

Here, the trial court made numerous findings of fact, which are unchallenged on appeal, that demonstrate Swan's intent jointly to create a family with Davis and intentionally to identify her as a parent of the minor child. These findings indicate that the parties jointly decided to have a child and that Swan would be the one to get pregnant, that Davis helped choose the sperm donor and attended doctor's appointments, that the parties had a baby shower and planned the minor's nursery together, that Swan allowed Davis to be present during the minor child's delivery and birth, that the parties sent out birth announcements referring to the minor child as "our daughter" and listing Swan and Davis as her "proud parents", and that the minor child's last name "SWAN-DAVIS" combines both parties' surnames. Additionally, the parents of both parties were recognized as the minor child's grandparents.

Similar to this Court's determination in *Mason*, the trial court's findings in this case reveal that the parties largely "functioned as if they were both parents[.]" *Mason*, 190 N.C. App. at 223, 660 S.E.2d at 67. The minor child referred to Swan as "mom" and to Davis as "mama"; Davis was involved in the day-to-day parenting and financial support of the minor child from the time of her birth until the parties separated. Even after separation, Davis continued to provide financial support for the minor child, including paying for the minor's private schooling and her extracurricular activities, and the minor child spent an average of eleven overnight visits per month with Davis. Although the parties did not execute a parenting agreement, Swan

appointed Davis as the minor's guardian in her last will and testament and signed an Authorization to Consent to Health Care for Minor and a Power of Attorney for Child Care.

Perhaps most importantly, the trial court found "the parties jointly decided to create a family and intentionally took steps to identify Plaintiff as a parent of the minor child"; Swan "encouraged, fostered, and facilitated the emotional and psychological bond between [Davis] and the minor child up until the parties' separation"; and Swan "testified that, prior to and at the time of [minor child]'s birth, she assumed both of the parties would be parents to [minor child]. Here, as in *Price* and *Mason*, the trial court's findings "establish that [the legal parent] intended—during the creation of this family unit—that this parent-like relationship would be permanent, such that she 'induced [non-parent and minor] to allow that family unit to flourish in a relationship·of love and duty with no expectations that it would be terminated." *Mason*, 190 N.C. App. at 225-26, 660 S.E.2d at 68 (quoting *Price*, 346 N.C. at 83, 484 S.E.2d at 537).

Further, because the aforementioned findings, uncontested and thus binding on appeal, support the trial court's conclusion that Swan's conduct was inconsistent with her constitutionally protected parental right to exclusive care and control of the minor child, we need not address Swan's remaining arguments on appeal.

In conclusion, because the trial court's findings of fact are supported by clear, cogent, and convincing evidence and those findings in turn support its conclusion that Swan acted inconsistently with her constitutionally protected parental status, we find Swan's arguments on appeal to be without merit.

Affirmed.

Judges CALABRIA and ELMORE concur.

Judge WYNN concurred in this opinion prior to 9 August 2010.