An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-453

NORTH CAROLINA COURT OF APPEALS

Filed: 31 December 2014

DEBORAH J. TONEY,
     Plaintiff,

     v.                                   Rutherford County
                                          No. 12 CVD 864
LEE ANNA EDGERTON,
     Defendant.


Appeal by Plaintiff from an amended order entered 11 October 2013 by Judge Dennis Redwing in Rutherford County District Court. Heard in the Court of Appeals 7 October 2014.

> *Cerwin Law Firm, P.C., by Brittany N. Waters, for Plaintiff-Appellant.*

> *Aaron G. Walker, P.A., by Aaron G. Walker, and Roberts & Stevens, P.A., by Phillip T. Jackson, for Defendant-Appellee.*


DILLON, Judge.


Deborah J. Toney ("Plaintiff") appeals from an order dismissing her claim for custody of the adoptive daughter of Lee Anna Edgerton ("Mother"), her former partner, for lack of standing. We affirm.

I. Background

The parties to this custody action were partners for a number of years, during which Mother adopted a child from Guatemala. The parties began experiencing difficulties in their relationship, culminating eventually in Mother obtaining a domestic violence protective order against Plaintiff and forcing Plaintiff to leave her home.

In June of 2012, following a hearing, the trial court entered a temporary consent order awarding primary physical custody of the child to Mother and granting Plaintiff visitation privileges.

Two months later, on the date the temporary consent order expired, Plaintiff arrived at Mother's home to pick up the child, only to find that nobody was home. As a result, Plaintiff filed this action seeking custody of the child. Mother filed a timely answer.

In October of 2012, following a hearing, the trial court entered another temporary consent order granting Mother primary physical custody and allowing Plaintiff visitation pending the outcome of the trial.

Over the next year, the trial court conducted hearings and presided over a two-day trial, all of which led to the entry of a number of orders. Ultimately, however, in October of 2013,

the court entered an order determining that Plaintiff lacked standing to proceed in the matter and dismissing her claim for custody. Plaintiff timely filed written notice of appeal of several orders, but only argues error arising from the October 2013 order dismissing her claim for lack of standing, so we review only that order in this appeal.

## II. Standard of Review

In custody proceedings, "the trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Owenby v. Young*, 357 N.C. 142, 147, 579 S.E.2d 264, 268 (2003). We review *de novo* whether the findings support the conclusions of law. *Hall v. Hall*, 188 N.C. App. 527, 530, 655 S.E.2d 901, 904 (2008).

## III. Analysis

Plaintiff argues that the trial court erred in concluding that she had not demonstrated by clear, cogent, and convincing evidence that Mother acted inconsistently with her constitutionally protected paramount status as legal parent of her adoptive child. We disagree.

### A. Standing

At the outset, we note, as we did in *Mason v. Dwinnell*, 190 N.C. App. 209, 660 S.E.2d 58 (2008), "that the factual context of this case — involving same sex domestic partners — is immaterial to the proper analysis of the legal issues involved." *Id.* at 211, 660 S.E.2d at 60. A third party has no standing under the United States Constitution or the North Carolina Constitution to assert a claim for custody against a legal parent "unless the evidence establishes that the legal parent acted in a manner inconsistent with his or her constitutionally-protected status as a parent." *Estroff v. Chatterjee*, 190 N.C. App. 61, 63-64, 660 S.E.2d 73, 75 (2008). "By looking at both the legal parent's conduct and his or her intentions, we ensure that the situation is not one in which the third party has assumed a parent-like status on his or her own without that being the goal of the legal parent." *Id.* at 70, 660 S.E.2d at 78-79. Simply put, the question in such cases is this: "Did the legal parent act inconsistently with her fundamental right to custody, care, and control of her child and her right to make decisions concerning the care, custody, and control of that child?" *Mason*, 190 N.C. App. at 222, 660 S.E.2d at 67.

Plaintiff contends that this case is analogous to *Mason*, where we held that, through the performance of various

affirmative acts, a constitutionally protected relationship in the nature of a parent-child relationship had been created between a child and the former partner of the child's biological mother. *See* 190 N.C. App. at 225-26, 660 S.E.2d at 68-69. In *Mason*, the biological mother and her partner raised a child together, jointly supporting the child and making decisions regarding the child's upbringing and executing an agreement in the third year of the child's life wherein they stipulated that the mother's partner occupied a relationship of *de facto* parentage with the child. *Id.* at 212, 660 S.E.2d at 60-61. Based on our Supreme Court's decision in *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997), we identified as the central issue in the case whether the biological mother, as the legal parent of the child, *both* created the family unit of which her partner claimed to be a part *and* induced her partner to participate in that family unit, thereby "allow[ing] that family unit to flourish in a relationship of love and duty with no expectations that it would be terminated." *Id.* at 225, 660 S.E.2d at 68 (quoting *Price*, 346 N.C. at 83, 484 S.E.2d at 537) (emphasis removed). We reasoned that the biological mother had created such a family unit and induced her partner to participate in it through various acts, not least of which

included the execution of the parenting agreement, creating a constitutionally protected relationship between her partner and the child by ceding her own paramount status as against her partner. *Id.* at 225-26, 660 S.E.2d at 68-69. We concluded that the biological mother could not unilaterally exclude her then-former partner from the child's life after voluntarily allowing a constitutionally protected relationship between her former partner and the child to develop even though her former partner did not possess full rights of legal parentage. *Id.* at 227-28, 660 S.E.2d at 70.

On the same day we filed our decision in *Mason*, we also filed our decision in *Estroff*, applying the same constitutional principles to similar, albeit crucially distinct, facts, and reaching the opposite result. *See* 190 N.C. App. at 63-64, 660 S.E.2d at 74-75. We find the present case far more closely analogous to *Estroff* than *Mason*. In *Estroff*, we affirmed the trial court's dismissal of a former partner's action for custody of children born during her relationship with the children's mother for lack of standing. *Id.* Specifically, we concluded that there was competent evidence to support the trial court's findings establishing that the mother neither voluntarily chose to create the requisite family unit nor induced her partner to

participate in it. *Id.* at 73-74, 660 S.E.2d at 81. In pertinent part, the trial court based its conclusion on findings that while the partner "played a unique and special role in the lives of [the mother's] children," she was not a biological parent, adoptive parent, parent by estoppel, or *de facto* parent, never entered an agreement with the mother granting her legal status as a parent, custodian, or legal guardian, never discussed entering into such an agreement with the mother, never filed a friendly lawsuit or otherwise attempted to establish parental or custodial rights to the children during the relationship, and furthermore, that the mother "would never have agreed to bestow on [her partner] or anyone else any parental or custodial rights with regard to her children." *Id.* at 66-67, 660 S.E.2d at 76.

In the present case, the trial court found that Mother intended the child to be her legal child; that while Plaintiff was in a relationship with Mother at the time she adopted the child, Mother intended for Plaintiff's relationship with the child to be temporary; that a friendly lawsuit was never filed to establish Plaintiff's custodial rights to the child; that Mother never contacted an attorney about drafting a parenting agreement to establish Plaintiff's custodial rights to the

child; that Mother amended her will to include a clause naming Plaintiff as the guardian of her child in the event of her death because she was intimidated by Plaintiff but later removed that provision without Plaintiff's knowledge; and finally that these actions showed that Mother did not intend to form a permanent relationship between her child and Plaintiff. We believe that these findings, like the trial court's findings in *Estroff*, establish that Mother neither voluntarily chose to create a family unit of which Plaintiff claimed to be a part nor induced Plaintiff to participate in such a family unit. Accordingly, Plaintiff's argument that the trial court erred in concluding that she failed to show by clear, cogent, and convincing evidence that Mother acted inconsistently with her constitutionally protected paramount status is overruled.

Plaintiff next argues that the trial court relied inappropriately on Mother's intent to create a permanent relationship between Plaintiff and her child in arriving at the conclusion that she lacked standing to seek custody of Mother's child. Specifically, Plaintiff contends that in focusing solely on whether Mother intended to create a permanent relationship in the nature of a parent-child relationship between her child and

Plaintiff, the court applied the incorrect legal standard. We disagree.

Plaintiff quotes the following language from our decision in *Estroff* in support of her argument:

> [T]he court's focus must be on whether the legal parent has voluntarily chosen to create a family unit and to cede to the third party a sufficiently significant amount of parental responsibility and decision-making authority to create a permanent parent-like relationship with his or her child.

*Id.* at 70, 660 S.E.2d at 78. According to Plaintiff, "[t]he circumstances here are simply summed up in an old English Proverb[,] 'actions speak louder than words.'" Plaintiff conveniently omits the two sentences that follow the above-quoted passage, wherein we explain:

> The parent's intentions regarding that relationship are necessarily relevant to that inquiry. By looking at both the legal parent's conduct and his or her intentions, we ensure that the situation is not one in which the third party has assumed a parent-like status on his or her own without that being the goal of the legal parent.

*Id.* at 70, 660 S.E.2d at 78-79. Thus, while true that Mother's intent was not the *only* relevant consideration under *Price*, it was certainly *a* relevant consideration to the trial court's determination of whether Plaintiff had standing. We note also

that we rejected essentially the same argument Plaintiff now makes in *Estroff*. *See id.* at 68-69, 660 S.E.2d at 77-78 ("[The mother's partner] argues, . . . that *Price* supports her view that only manifested intentions are relevant. . . . We disagree with [this] reading of *Price*. . . . [B]oth conduct and intent are relevant."). *Estroff* thus cannot bear the weight of Plaintiff's assertions.

Plaintiff's characterization of the trial court's decision as based solely on Mother's intent to form a permanent relationship between Plaintiff and her child is not even descriptively accurate. The court found that Mother transported the child from Guatemala to the United States; that the child lived in Mother's home; that Mother adopted the child; that Mother frequently asked Plaintiff to leave the home and tried to end their relationship; that after a harrowing episode of domestic violence, Plaintiff did leave the home after Mother obtained a domestic violence protective order forcing her to do so; that Mother amended her will to include a provision granting Plaintiff custody of her child in the event of her death, but subsequently amended the will again to remove that provision without Plaintiff's knowledge; and that Mother routinely prepared meals for the child, played with the child, and read to

the child. These actions all qualified as conduct relevant to the trial court's determination of whether Mother acted inconsistently with her constitutionally paramount status under *Price*. *See id.* at 68-69, 660 S.E.2d at 77-78. We do not believe that the trial court focused on Mother's intentions concerning her child's relationship with Plaintiff to the exclusion of her actions. Accordingly, this argument is overruled.

## B. Findings

Plaintiff also contends that certain of the trial court's findings were not supported by competent evidence. "Competent evidence is evidence that a reasonable mind might accept as adequate to support [a] finding." *City of Asheville v. Aly*, ___ N.C. App. ___, ___, 757 S.E.2d 494, 499 (2014). We address the challenged findings in turn.

In relevant part, finding of fact number four[1] states that Mother began working with an adoption agency to adopt a child from Guatemala in 2007, and that Mother transported the child from Guatemala to the United States in 2008. Plaintiff contends

---

[1] As Mother alerted the Court to in her brief, Plaintiff mistakenly refers to finding of fact number four as finding of fact number nine. We believe that the issue was properly preserved for our review despite this error, and will review the challenged finding using the number from the trial court's order.

that the only evidence related to the finding that Mother began working with an adoption agency was her testimony that she, and not Mother, initiated contact with an adoption agency. We disagree. Mother testified that in 2005 or 2006, she and Plaintiff encountered a couple who had adopted a child from Guatemala, prompting her to investigate an international adoption. She also testified that she informed Plaintiff that she wanted to be the adoptive parent and further, that Plaintiff never informed her of a desire to be an adoptive parent. Plaintiff also asserts that the language in the finding suggests – without support from the record – that Mother transported the child from Guatemala by herself. We do not find the language of the finding impermissibly suggestive in this manner. The finding merely states that Mother transported the child. Both parties testified that they were present during the transportation of the child. We therefore conclude that competent evidence existed to support the trial court's finding as to both Mother's involvement in working with an adoption agency and in transporting the child back to the United States.

Plaintiff next challenges finding of fact number five, that Mother attempted to have children in the early 1990s prior to her relationship with Plaintiff. However, Mother testified that

she pursued having children with her then-husband from 1989 to 1991. We therefore conclude that competent evidence existed to support this finding.

Plaintiff next challenges finding of fact number seven, regarding her issues with anger management. Plaintiff claims that there was no evidence of Mother's concerns about her lack of anger management. We disagree. The record is replete with references to Plaintiff's quick temper and violent behavior. Specifically, Mother's account of the events leading up to her pursuing a domestic violence restraining order against Plaintiff amply support the trial court's finding regarding Mother's concerns about Plaintiff's inability to manage her anger. We therefore conclude that competent evidence existed to support this finding.

Plaintiff also challenges the portion of finding of fact number seven which states, in relevant part, that "[Mother] . . . intended the relationship between the Plaintiff and the child to be temporary." However, Plaintiff concedes that Mother testified that she did not intend to form a permanent relationship between her child and Plaintiff. As the trier of fact, the trial court was entitled to credit Mother's testimony

regarding her intent. We therefore conclude that competent evidence supports this finding.

Plaintiff next challenges the language in finding of fact number eight, that she frequently passed out after consuming excess amounts of alcohol. Plaintiff claims that the only evidence of her passing out frequently due to excessive alcohol consumption was Mother's testimony. Though Mother's testimony is sufficient to support this finding, we note that another witness testified about an occasion where Plaintiff, in the presence of the child for parts of the day, consumed four Bloody Marys in the morning immediately after waking up, continued to drink beer throughout the day, and then passed out in the evening after drinking coffee mixed with liqueur while "barely able to sit up" in a chair in the living room. Plaintiff also takes issue with the court's use of the word "frequently" in the finding. However, Mother's testimony regarding numerous specific instances of Plaintiff drinking heavily and then falling asleep, both at home as well as in public places like restaurants, describes behavior more than sufficiently "frequent" to warrant characterization by the court as such.

Plaintiff also challenges finding of fact number eleven, where the court found that Mother had asked Plaintiff to leave

the home and communicated her desire to end the relationship frequently over a four-year period, claiming again that the characterization of Mother's communication as "frequent" was not supported by the record. However, this finding is supported by Mother's testimony. Specifically, Mother testified that she initiated between fifteen and twenty conversations with Plaintiff about moving out of her home dating back to 2008 and 2009. According to Mother, Plaintiff would behave the next day as though these conversations never took place, despite indicating her amenability at the time Mother initiated the conversations. Mother further testified that the issue was discussed frequently during the year of 2009. We therefore conclude that competent evidence supported this finding.

Plaintiff next challenges finding of fact number twelve, claiming that no competent evidence existed that Mother provided for Plaintiff's appointment as guardian of the child in her will *because she was intimidated by Plaintiff into doing so.* However, Mother testified that she felt tremendous pressure to include the guardianship clause in her will, and that Plaintiff was very adamant both that she do it and about the manner in which she did it. We believe this evidence supports the finding.

Plaintiff finally challenges the portion of finding of fact number fourteen, where the court found that Mother was generally unaware of Plaintiff's representations of her relationship with the child to third parties, arguing that no evidence supported this finding because Mother did not testify about whether she knew how Plaintiff represented her relationship with the child to third parties. Plaintiff cites Mother's apparent acquiescence to her representations to third parties regarding her relationship with the child as contrary evidence to the finding that Mother was unaware of those representations. However, Mother testified that these representations were made without her consent. A reasonable mind might accept Mother's testimony that such representations were made without her consent as adequate to support the trial court's finding that she was *generally* unaware of how Plaintiff represented her relationship with the child to third parties. Accordingly, we conclude that competent evidence supported this finding.

## IV. Conclusion

The trial court correctly concluded based on findings supported by competent evidence that Plaintiff lacked standing to seek custody of Mother's adoptive daughter.

AFFIRMED.

Judge HUNTER, Robert C. and Judge DAVIS concur.

Report per Rule 30(e).