MARINA HEATZIG, Plaintiff v. ELIZABETH MacLEAN, Defendant v. B.A. MacLEAN
AND WIFE, CHARLOTTE MacLEAN, Intervenor Defendants and Cross-Complainants

No. COA07-875

(Filed 5 August 2008)

## 1. Parent and Child— parent by estoppel—theory not adopted

The theory of parent by estoppel is not adopted: the North Carolina Supreme Court has enunciated a clear and comprehensive framework for determining custody claims of persons who are not the parent of the children.

## 2. Parent and Child— parental status—no authority to confer

The trial court erred by conferring parental status on a same sex partner where the court rejected the assertion that the birth mother had acted inconsistently with her constitutionally protected status as a natural parent. A district court in North Carolina is without authority to confer parental status upon a person who is not the biological parent of a child.

## 3. Child Support, Custody, and Visitation— same sex partners—findings regarding intent to create a family unit required—clear, cogent and convincing standard

A child custody action involving same sex partners was remanded for further findings where the trial court acted under a misapprehension of the law. The court made no findings specifically addressing the intent of defendant to create a family unit that included plaintiff and the two children or to cede to plaintiff parental responsibility and decision-making authority. The required evidence must be clear, cogent, and convincing.

## 4. Judges— order of the court—drafted by party—appearance of impartiality

It was noted that a remanded order should have been entirely typewritten and should have had consistent paragraph numbers where the order as filed included the footer "Defendant's Proposed Order" and a handwritten addition, so that the paragraph numbers were not consistent. The signing of such an order does not convey an appearance of impartiality on the part of the court.

**HEATZIG v. MacLEAN**

[191 N.C. App. 451 (2008)]

Appeal by defendant from orders entered 22 January 2007 by Judge M. Patricia DeVine in Orange County District Court. Heard in the Court of Appeals 6 February 2008.

*Patterson Harkavy, LLP, by Burton Craige, and Epting & Hackney, by Karen P. Davidson, for plaintiff-appellee.*

*Wyrick Robbins Yates & Ponton, LLP, by K. Edward Greene, Tobias S. Hampson, and D. Caldwell Barefoot, Jr., for defendant-appellant.*

STEELMAN, Judge.

Where the trial court improperly attempted to confer parental status on plaintiff and failed to conduct a proper analysis under *Price v. Howard,* the judgment of the trial court must be reversed, and the case remanded for further findings of fact.

## I. Factual and Procedural Background from Trial Court Orders

Elizabeth MacLean (defendant) and Marina Heatzig (plaintiff) met in 1992 in San Francisco, California. They became domestic partners, and moved to North Carolina together.

Defendant had always wanted to have children and had been trying to become pregnant for many years. Plaintiff and defendant decided that defendant would be artificially inseminated. The timing of the pregnancy was largely the decision of defendant. They sought a sperm donor with physical attributes matching those of plaintiff. Plaintiff attended all birthing classes with defendant. On 20 December 2000, defendant gave birth to twins. Plaintiff was present at the delivery, and one of the names of each child was from plaintiff's family. Both parties signed the birth certificate application form. Due to hospital policy, only defendant signed the birth certificates. It was agreed that defendant would stay at home with the infants. For almost three and a half years, plaintiff, defendant, and the two children resided together in the same household. Defendant executed documents allowing plaintiff to obtain health care for the children; each party signed durable powers of attorney naming the other as attorney in fact and wills naming the other as beneficiary; plaintiff was nominated as guardian for the children in the event of defendant's death; both parties' names appear on the baptism certificates for the children; both parties signed as parents on medical forms; and both signed enrollment forms when the children attended preschool.

Beginning in January 2002, the relationship between plaintiff and defendant began to deteriorate. Plaintiff wanted to go out at night and defendant wanted to stay at home with the children. The parties had markedly different styles of dealing with the children. Plaintiff would become frustrated with the children and would curse at them. Defendant's dedication to the children made plaintiff feel crowded out of the relationship.

On 4 April 2004, defendant left the parties' residence, taking the children with her. It appears that the parties agreed to a written schedule which allowed plaintiff and defendant equal access to the children. On 26 June 2004, defendant advised plaintiff that she was taking the children to live with her and would decide whether she would afford plaintiff visits.

On 28 June 2004, plaintiff filed an action in Orange County District Court, seeking joint custody and visitation. On that same date, the trial court entered an *ex parte* order granting plaintiff temporary joint custody of the children and continuing the parties' previously agreed-upon visitation schedule.

In her amended complaint filed 16 July 2004, plaintiff did not allege that defendant had acted inconsistently with her constitutionally protected rights. There was no articulation of a theory of *de facto* parent, or parent by estoppel. Plaintiff merely asserted that she was a parent of the two minor children.

The matter was heard on 18-20 September 2006. On 22 January 2007, the trial court entered and filed two separate orders. The first order reduced to writing two earlier rulings of the trial court: (1) the denial of defendant's motion for judgment on the pleadings, heard on 16 August 2006; and (2) the denial of defendant's motions to dismiss pursuant to Rule 41(b) of the Rules of Civil Procedure at the close of plaintiff's evidence and at the close of all the evidence. The first order also referenced the trial court's earlier denial of defendant's motion to dismiss for failure to state a claim upon which relief could be granted (Rule 12(b)(6) of the Rules of Civil Procedure). The second order granted sole legal custody of the children to defendant, but awarded joint physical custody of the children to plaintiff and defendant, with a detailed schedule for plaintiff to have time with the children. The second order also provided for the appointment of a parenting coordinator by separate order. Defendant appeals. Plaintiff makes cross-assignments of error asserting that the trial court erred in concluding that defendant had not acted inconsistently with her constitutionally protected rights as a parent.

## II. Custody Order[1]

### Standard of Review

"The standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.'" *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (2002) (quotation omitted). We review the trial court's conclusions of law *de novo. Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 15, 356 S.E.2d 599, 601 (1987) (citation omitted). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). "Facts found by the judge are binding upon this court if they are supported by any competent evidence notwithstanding the fact that the appellant has offered evidence to the contrary." *Williams v. Williams*, 261 N.C. 48, 56, 134 S.E.2d 227, 233 (1964) (citation omitted).

### Price v. Howard

"[T]he 'Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.'" *Owenby v. Young*, 357 N.C. 142, 144, 579 S.E.2d 264, 266 (2003) (quoting *Troxel v. Granville*, 530 U.S. 57, 66, 147 L. Ed. 2d 49, 57 (2000)). If a legal parent (biological or adoptive) acts in a manner inconsistent with his or her constitutionally-protected status, the parent may forfeit this paramount status, and the application of the 'best interest of the child' standard in a custody dispute with a non-parent would not offend the Due Process Clause. *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997); N.C. Gen. Stat. § 50-13.2(a) (2007) ("An order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child. . . .").

In *Mason v. Dwinnell*, 190 N.C. App. 209, 660 S.E.2d 58 (2008), we noted that the determination of whether a parent has acted in a manner inconsistent with his or her constitutionally protected status must be made on a case-by-case basis. *Mason* at 214-15, 660 S.E.2d at 64. In

---

1. While the trial court designated the Custody Order entered in this case as a "Permanent Custody Order," this terminology is legally incorrect. Custody orders are never "permanent," but rather are always subject to revision based upon changes in circumstances. N.C. Gen. Stat. § 50-13.7(a) (2007).

*Estroff v. Chatterjee*, 190 N.C. App. 61, 660 S.E.2d 73 (2008), this Court emphasized that "both conduct and intent are relevant" in making this determination. *Estroff* at 69, 660 S.E.2d at 78. Further, it is clear from *Mason* and *Estroff* that in order to constitute acts inconsistent with a parent's constitutionally protected status, the acts *are not* required to be "bad acts" that would endanger the children. However, "[i]f a natural parent's conduct has not been inconsistent with his or her constitutionally protected status, application of the 'best interest of the child' standard in a custody dispute with a nonparent would offend the Due Process Clause." *Price* at 79, 484 S.E.2d at 534.

## Interlocutory Order and Parent by Estoppel

[1] In her first argument, defendant contends that the trial court erred in applying the doctrine of parent by estoppel in this case. We hold that the trial court did not expressly apply this doctrine in its Custody Order, and that such an application would have been improper.

The trial court entered and filed two orders on 22 January 2007. The first memorialized its denials of defendant's motions to dismiss under Rule 41(b) at trial. The second was the Custody Order. In the first order, the trial court concluded, *inter alia*, that defendant abrogated her "primary paramount right" as a parent, and, in the alternative, that plaintiff was a "parent by estoppel." The Custody Order concluded that defendant "has not acted in a manner inconsistent with her constitutionally protected status as a natural parent of the minor children." Further, it did not expressly address the legal theory of "parent by estoppel."

The order denying defendant's Rule 41(b) motions to dismiss was interlocutory, and was superceded by the entry of the Custody Order. *See Howard v. Ocean Trail Convalescent Center*, 68 N.C. App. 494, 495, 315 S.E.2d 97, 99 (1984) ("Denial of a motion to dismiss is interlocutory because it simply allows an action to proceed and will not seriously impair any right of [a party] that cannot be corrected upon appeal from final judgment."). On appeal, we only review the Custody Order.

Because the trial court may have concluded that plaintiff was a "parent" based upon an unarticulated "parent by estoppel" theory, and because plaintiff extensively argues in her brief that we adopt this theory, we address this question.

Plaintiff cites the American Law Institute's ("ALI") recent recommendation which endorses this approach, defining a parent by estoppel as a person who, although not a biological or adoptive parent:

[L]ived with the child since the child's birth, holding out and accepting full and permanent responsibilities as parent, as part of a prior co-parenting agreement with the child's legal parent . . . to raise a child together each with full parental rights and responsibilities, when the court finds that recognition of the individual as a parent is in the child's best interests[.]

Am. Law Inst., *Principles of the Law of Family Dissolution: Analysis and Recommendations*, § 2.03(b). As a preliminary matter, we note that the courts of North Carolina are not bound by the recommendations of ALI. Further, it is clear that, as defined by ALI, the foundation of a parent by estoppel claim is a co-parent agreement. This theory is directly contrary to this Court's holding in *Mason*, which, while recognizing that a parenting agreement may be considered in determining whether a parent had acted inconsistently with his or her constitutionally protected status, made clear that there is no "specific set of factors" which must be present in order for the standard in *Price* to be met, and that a parent's conduct must be viewed on a case-by-case basis. *Mason* at 214-15, 660 S.E.2d at 64.

Finally, although plaintiff cites to the Uniform Parentage Act in her brief, we note that North Carolina has not enacted this Act. *See Carrington v. Townes*, 53 N.C. App. 649, 682, 281 S.E.2d 765, 773 (1981).

We decline plaintiff's invitation to adopt the theory of parent by estoppel. In *Price*, our Supreme Court enunciated a clear and comprehensive framework for determining custody claims of persons who are not the parent of the children. This framework was carefully tailored to meet the due process concerns articulated by the United States Supreme Court in *Lehr v. Robertson*, 463 U.S. 248, 77 L. Ed. 2d 614, 103 S. Ct. 2985 (1983). It is not the role of this Court to adopt theories that conflict with or are inconsistent with the holdings of our Supreme Court in *Lehr* and *Price*. *See Rogerson v. Fitzpatrick*, 121 N.C. App. 728, 732, 468 S.E.2d 447, 450 (1996) ("It is elementary that this Court is bound by holdings of the Supreme Court.").

### Conferring Parental Status on Plaintiff

[2] In her next argument, defendant contends that the trial court erred in conferring parental status of the two minor children upon plaintiff. We agree.

**HEATZIG v. MacLEAN**

[191 N.C. App. 451 (2008)]

In its Custody Order, the trial court made the following nine conclusions of law:

1. It is in the best interest of these children that BOTH parents enjoy SHARED PHYSICAL CUSTODY: the exclusive and parallel right to take care of the children; to keep them safe; to enjoy their company; to share the best of themselves with them; to learn in turn from them; to teach them; and to expose them to new and wonderful ideas and places and experiences and extended family.

2. It is in the best interest of these children that one parent have the right and responsibility of decision-making with respect to the important and long-term implications for their welfare and best interest, education, health care, religious training, and the like.

3. This court concludes as a matter of law that the parties cannot share the responsibility of making the major decisions: they cannot work and come together to evaluate options; to reach consensus on shared values upon which decisions would be based; to share a common perception of each child's wishes and needs at each stage of the child's life; to compromise where there is simply clear disagreement; and to support one-another in the decision reached in front of the children; and then to strive to work together to make the resulting decision work.

4. Elizabeth has not neglected or abandoned the minor children and has remained an involved and engaged party since the children's birth. Elizabeth is a fit and proper person to have physical and legal custody of the minor children and has not acted in a manner inconsistent with her constitutionally protected status as a natural parent of the minor children.

5. Marina is the non-biological parent of the children and is to be given legal status equal to that of Elizabeth, the biological parent, and Marina is a fit and proper person to have physical custody of the minor children as set forth in this order.

6. Elizabeth is the parent who is best able to promote the interest and welfare of these children.

7. It is in the best interest of the children that Elizabeth have sole legal custody.

8. It is in the children's best interest that the visitation schedule recommended by Dr. Sortisio be adopted in its entirety.

9. It is in the children's best interest that a Parent Coordinator be appointed to assist the parties in fine-tuning and putting into place this schedule.

These conclusions show that the trial court affirmatively rejected plaintiff's assertion that defendant had acted inconsistently "with her constitutionally protected status as a natural parent of the minor children." Rather, the trial court chose to grant shared physical custody of the minor children to plaintiff by conferring the legal status of parent upon plaintiff. This is confirmed by the trial court's remarks at the time the final ruling in this matter was orally announced on 27 September 2006 in open court:

> The biggest single issue in this case in the opinion of this Court is my conclusion that each woman comes into this court and ends this trial with the designation as parent. That was not clear at the beginning and some people thought very hard in that regard, but I made a ruling that I am comfortable with and that I love that says Elizabeth MacLean and Marina Heatzig are now to be considered parents of Quinn and Enid. I believe that is the single biggest issue in the case as a matter of law.

This ruling by the trial court was without legal authority or precedent. A district court in North Carolina is without authority to confer parental status upon a person who is not the biological parent of a child. The sole means of creating the legal relationship of parent and child is pursuant to the provisions of Chapter 48 of the General Statutes (Adoptions). *See* Legislative findings and intent set forth in N.C. Gen. Stat. § 48-1-100 (2007).

The trial court's ruling in this case rests solely upon a flawed and non-existent legal theory. *Seyboth v. Seyboth*, 147 N.C. App. 63, 67-68, 554 S.E.2d 378, 382 (2001). Further, as discussed above, it was improper for the trial court to apply a "best interest" analysis without first determining that defendant's conduct was inconsistent with her constitutionally protected status as a parent. *See Price* at 79, 484 S.E.2d at 534.

## Conclusion of Law Number Four

[3] Because we have held that the trial court erred in applying the "best interests" test without first concluding that defendant had acted inconsistently with her constitutionally protected status as a parent, this appeal hinges upon the resolution of plaintiff's cross-assignments

of error, and we need not address defendant's remaining assignments of error.

In her first cross-assignment of error, plaintiff contends that the trial court erred in its conclusion of law number four by accepting defendant's contention that only "bad acts" on the part of a parent can constitute acts inconsistent with a parent's constitutionally protected status. In her second cross-assignment of error, plaintiff contends that conclusion of law number four was in error. Plaintiff contends that the trial court's conclusion is based on a misinterpretation of *Price*, and that the trial court erroneously merged defendant's fitness as a parent with the separate determination of whether she acted in a manner inconsistent with her constitutionally protected status. Plaintiff argues that the findings of fact by the trial court compel a conclusion that defendant's acts were in fact inconsistent with her constitutionally protected status as a parent. We conclude that the trial court acted under a misapprehension of law, and remand this matter to the trial court for further findings.

Our review of a trial court's conclusions of law is *de novo*. *See Huyck Corp.* at 15, 356 S.E.2d at 601. Plaintiff does not cross-assign as error any of the trial court's findings of fact, and they are therefore binding upon the appellate courts. *Koufman* at 97, 408 S.E.2d at 731. Our review is limited to whether the trial court's findings of fact support its conclusion of law number four.

In *Mason*, this Court stated a number of factors that supported the trial court's conclusion that the defendant acted inconsistently with her constitutionally protected rights as a parent: (1) both plaintiff and defendant jointly decided to create a family unit; (2) defendant intentionally identified plaintiff as parent; (3) the sperm donor was selected based upon physical characteristics similar to those of plaintiff; (4) the surname of plaintiff was used as one of the child's names; (5) plaintiff participated in the pregnancy and the birth of the child; (6) there was a baptism ceremony where both plaintiff and defendant were identified as parents; (7) plaintiff was identified as a parent on school forms; (8) they functioned together as a family unit for four years; (9) after the relationship between plaintiff and defendant ended, the defendant allowed plaintiff the functional equivalent of custody for three years; (10) defendant encouraged, fostered, and facilitated an emotional and psychological bond between plaintiff and the child; (11) plaintiff provided care and financial support for the child; (12) the child considered plaintiff to be a parent; (13) plaintiff and defendant shared decision-making authority with respect to the

child; (14) plaintiff was a medical power of attorney for the child; (15) the parties voluntarily entered into a parenting agreement; and (16) defendant intended to create between plaintiff and the child a permanent parent-like relationship. *Mason* at 214, 660 S.E.2d at 67.

In *Estroff,* this Court focused heavily upon the intent of the biological mother of the children, stating ". . . the court's focus must be on whether the legal parent has voluntarily chosen to create a family unit and to cede to the third party a sufficiently significant amount of parental responsibility and decision-making authority to create a permanent parent-like relationship with his or her child." *Estroff* at 69, 660 S.E.2d at 78.

A review of the trial court's findings of fact in the instant case reveals that the court made no findings specifically addressing the intent of defendant to create a family unit that included plaintiff and the two children or to cede to plaintiff parental responsibility and decision-making authority. The order contains no ultimate findings of fact, but only evidentiary findings. *See Woodard v. Mordecai,* 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951). The following findings by the trial court would appear to support a conclusion that defendant acted inconsistently with her constitutionally protected parental rights: (1) it was a joint decision for defendant to get pregnant by artificial insemination; (2) the sperm donor was selected based upon physical characteristics similar to plaintiff; (3) plaintiff participated in the birthing classes and was present at the birth; (4) both parties signed the birth certificate application; (5) there was a baptismal ceremony where both plaintiff and defendant were identified as parents; (6) plaintiff was given authority to obtain health care treatment for the children; and (7) names from plaintiff's family were used in the names of each of the children. However, there are also findings of fact that would support a conclusion that defendant did not act inconsistently with her constitutionally protected rights: (1) defendant had been trying to get pregnant for many years before she and plaintiff began their relationship; (2) the timing and methodology decisions regarding defendant's pregnancy were made primarily by defendant; and (3) the parties were unable to work out a parenting agreement.

The evidence required to show that a parent has acted inconsistently with her constitutionally protected parental status must be clear, cogent and convincing. *Adams v. Tessener,* 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001). There is no indication that the trial court applied this standard in reaching its decision in the instant case.

It is clear that the trial court acted under several misapprehensions of law. First, it applied a non-existent legal theory to award custodial rights in the children to plaintiff. Second, it is not clear whether it believed that acts inconsistent with a parent's constitutionally protected rights had to be bad acts to qualify under *Price. See Mason.* Third, the trial court did not consider that the evidence required to meet the standard under *Price* be clear, cogent and convincing. Fourth, the trial court failed to focus upon the intentions of defendant as required by *Price,* now made manifestly clear under the holdings in *Mason* and *Estroff.*

We remand this matter to the trial court for further findings of fact, and their consideration in light of the principles of *Price* as explained by *Mason* and *Estroff. See Cantrell v. Wishon,* 141 N.C. App. 340, 342, 540 S.E.2d 804, 806 (2000) ("[T]he findings and conclusions of the trial court must comport with [the] case law regarding child custody matters."); *see also Concerned Citizens v. Holden Beach Enterprises,* 329 N.C. 37, 54-55, 404 S.E.2d 677, 688 (1991) ("When the order or judgment appealed from was entered under a misapprehension of the applicable law, the judgment, including the findings of fact and conclusions of law on which the judgment was based, will be vacated and the case remanded for further proceedings.").

## Form of the Custody Order

[4] Orders and judgments in civil actions are orders of the court, and not the orders of the parties. *See Walters v. Walters,* 307 N.C. 381, 386, 298 S.E.2d 338, 342 (1983). The Custody Order in this case contains a footer at the bottom of each page reading "Defendant's Proposed Order." On the final page of the order, the trial judge crossed through the signature line, and wrote in longhand an additional paragraph designated as "E." The designation of this paragraph bears no relationship to the numeration of the paragraphs in the typewritten order.

This Court has held that a trial court should not sign orders prepared on stationery bearing the name of the law firm that prepared the order, since it does not convey an appearance of impartiality on the part of the court. *See In re T.M.H.,* 186 N.C. App. 451, 652 S.E.2d 1 (2007); *Habitat for Humanity of Moore Cty., Inc. v. Board of Comm'rs of the Town of Pinebluff,* 187 N.C. App. 764, 653 S.E.2d 886 (2007). Similarly, the signing of an order marked as "Defendant's Proposed Order" does not convey an appearance of impartiality on the part of the court. We also note that the trial court signed the order

on 22 January 2007 after announcing her ruling on 27 September 2006. Given the long delay in signing the order, the trial court should have directed the revision of the order so that it was entirely typewritten and contained consistent paragraph numbers.

### III. Conclusion

We remand this case to the trial court for a proper application of *Price, Mason,* and *Estroff.* In applying these cases, the trial court should be mindful of the language in *Estroff* stating that the proper focus of the trial court is whether defendant "voluntarily chose[] to create a family unit" with plaintiff and to cede to plaintiff "parental responsibility and decision-making authority." *See Estroff* at 69, 660 S.E.2d at 78. The trial court may not apply a "best interests of the child" test unless it finds that plaintiff has proved by "clear, cogent, and convincing evidence" that defendant acted inconsistently with her constitutionally protected parental rights. Such rights are protected by the United States Constitution as interpreted by the United States Supreme Court and the North Carolina Supreme Court, and are not lightly to be set aside. In its discretion, the trial court may receive additional evidence as to whether defendant acted inconsistently with her constitutionally protected parental rights, and, if necessary, the best interests of the children.

REVERSED and REMANDED.

Judges ELMORE and ARROWOOD concur.