RENDERED: JULY 12, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1073-MR

KYLE LINK                                                   APPELLANT

v.

APPEAL FROM MEADE CIRCUIT COURT
HONORABLE KENNETH H. GOFF, II, JUDGE
ACTION NO. 22-CI-00009

KAYLA LINK                                                  APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: CETRULO, GOODWINE, AND KAREM, JUDGES.

KAREM, JUDGE: Kyle Link appeals from a Meade Circuit Court order dismissing his petition for joint custody of N.W.L. ("Son"), the minor child of his former wife, Kayla Link. The circuit court held that Kyle lacked standing and failed to prove that Kayla waived her superior parental rights. Kyle also appeals from a restraining order entered by the circuit court, banning him from communicating with Kayla or Son, from attending any events involving Son, and

from posting on social media about Son, Kayla, or the custody proceedings. Upon careful review, we (1) vacate the order dismissing Kyle's petition for custody and remand for findings regarding waiver under the standard set forth in *J.S.B. v. S.R.V.*, 630 S.W.3d 693 (Ky. 2021), and *Mullins v. Picklesimer*, 317 S.W.3d 569 (Ky. 2010), *as modified on denial of reh'g* (Aug. 26, 2010); and (2) vacate the restraining order because it fails to comport with Kentucky Rules of Civil Procedure ("CR") 65.

## FACTUAL AND PROCEDURAL BACKGROUND

Kayla is the biological mother of Son, who was born in California in April 2008. She gave him the surname of the man she believed to be his father. At the time, this individual was in prison and Kayla was living with his grandmother. Son's biological paternity has never been established.

Kayla and Son moved to Kentucky in March 2009, and Kayla married Kyle Link on December 5, 2009. Kyle and Kayla have a daughter ("Daughter") together, who was born in May 2010. They did not tell Son that Kyle was not his biological father and only close friends and family knew the truth. Kyle and Kayla did not want Son to find out about his paternity until he was older and more emotionally mature.

Both Son and Daughter called Kyle "Dad." According to Kayla, it was Son's choice how he referred to Kyle, but she did not discourage him from calling Kyle "Dad."

In 2011, while Kyle was deployed in Afghanistan, Kayla changed her last name and Son's last name to Link. She and Son had not shared the same last name up to this point and Kayla wanted all members of the family unit to have the same last name. Kyle acted as a parent towards both Son and Daughter, playing with them, preparing their meals, cleaning the house, and taking them to medical appointments. During a period when Kayla worked full-time, Kyle stayed home to look after the children. He was listed on school forms and medical forms as Son's parent/guardian.

Kyle and Kayla were divorced on August 13, 2018, after approximately nine years of marriage. Kyle and Kayla had previously discussed Kyle adopting Son. Kyle raised the issue again at the time of their divorce, but Kayla adamantly opposed adoption. At that point, Son was ten years of age and still believed Kyle was his father. Kayla assumed both children would be treated similarly in the divorce settlement but then was advised that Son should not be included in the dissolution settlement agreement.

Pursuant to the divorce settlement, Kayla and Kyle agreed to alternate weeks of parenting time for Daughter. In practice, they treated the agreement as if

it applied to both children. Son always accompanied Daughter when she went to stay at Kyle's house every other week. According to Kayla, this was so Son could ensure Daughter received proper care.

Kyle and Kayla contributed equal amounts financially to support the children after the divorce. Kyle paid childcare expenses for both children while Kayla paid for their health insurance premiums. When the children outgrew childcare, Kyle paid half their health insurance premiums. He also paid half their medical expenses, for items such as braces. The record contains a series of initially amicable emails and text messages between Kayla and Kyle following their divorce, consulting with one another on issues regarding both children. Over time, however, their relationship soured. On November 20, 2021, Kayla ended Son's contact with Kyle. At that time, without Kayla's knowledge, Kyle told Son he was not his biological father. Kyle filed a petition for custody and parenting time of Son on January 13, 2022.

The circuit court conducted a hearing on January 11, 2023, with testimony from Kayla, her fiancé, her sister, and Kyle. Son, who was 15 years old at the time, did not testify at the hearing and there is no indication that the circuit court interviewed Son in chambers. On April 25, 2023, the circuit court entered an order finding that Kyle did not have standing to bring the custody petition and that Kayla had not waived her superior right to custody. Kyle filed a motion for relief

-4-

pursuant to CR 59.05. While that motion was pending, Kayla filed a motion requesting a temporary injunction and restraining order against Kyle on behalf of herself and Son. Kyle filed a response. The circuit court entered an order stating that Kyle was to have no intentional contact or communication with Son until an evidentiary hearing was conducted. Following that hearing, which was conducted on August 14, 2023, the circuit court verbally denied Kyle's CR 59.05 motion and granted Kayla's motion for a restraining order. The court requested Kayla's counsel to draft two orders memorializing its decisions, which it entered on August 30, 2023. This appeal by Kyle from both orders followed.

## ANALYSIS

### i. Kyle had standing to bring his petition for custody because he co-parented Son for at least six months in the year prior to filing the petition

The circuit court held that Kyle lacked standing to petition for custody of Son. Kyle does not dispute that he cannot qualify as a *de facto* custodian under Kentucky Revised Statutes ("KRS") 403.270 but contends that the circuit court erred as a matter of law in ruling he cannot meet the criteria set out in KRS 403.800(13). We agree.

The circuit court's "ultimate determination on the standing issue is a pure legal question[,] which we review *de novo*." *F.E. v. E.B.*, 641 S.W.3d 700, 704 (Ky. App. 2022) (internal quotation marks and citation omitted). "Under *de*

*novo* review, we owe no deference to the . . . [circuit] court's application of the law to the established facts." *Id.*

Standing is defined as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Harrison v. Leach*, 323 S.W.3d 702, 705 (Ky. 2010) (citation omitted). In order to have standing, a party must "have a judicially recognizable interest in the subject matter of the suit." *Id.* (citation omitted).

"Prior to 2004, standing to bring a custody action was limited by KRS 403.240 to 'a parent, a de facto custodian of the child, or a person other than a parent only if the child is not in the physical custody of one of the parents.'" *Mullins*, 317 S.W.3d at 574 (citing *B.F. v. T.D.*, 194 S.W.3d 310, 310-11 (Ky. 2006)). So, for example, a "partner who lived with mother and mother's adopted child for six years as a family did not have standing to seek custody because the child was in the physical custody of the legal parent." *Id.*

This situation changed in 2004, with the passage of the Uniform Child Custody Jurisdiction and Enforcement Act, KRS 403.800 *et seq.*, which confers standing on the child's parents or "a person acting as a parent." *Mullins*, 317 S.W.3d at 574-75; KRS 403.822(1)(b)1. A "person acting as a parent" is defined as

a person, other than a parent, who:

(a) Has physical custody of the child or has had physical custody for a period of six (6) consecutive months, including any temporary absence, within one (1) year immediately before the commencement of a child custody proceeding; and

(b) Has been awarded legal custody by a court or claims a right to legal custody under the law of this state[.]

KRS 403.800(13).

"As used in KRS 403.800 to KRS 403.880, 'physical custody' means 'physical care and supervision of a child.'" *Mullins*, 317 S.W.3d at 575 (citing KRS 403.800(14)). Significantly for purposes of this appeal, "[t]his statutory definition of 'physical custody' does not require exclusive care and exclusive supervision." *Id*. Therefore, a person "who for the requisite period of time performed all the traditional parental responsibilities, **concurrently with another or on an equal time sharing basis**, had 'physical custody' under the provisions of KRS 403.800 *et seq*." *Id*. (emphasis added).

Under the terms of their dissolution settlement agreement, Kayla and Kyle have "joint, shared custody" of Daughter. The agreement provides for equal timesharing based on alternating weeks. It states that Kyle "shall have parenting time with [Daughter] beginning on Sunday July 29, 2018 until August 5, 2018 at 4:00 pm and every other week thereafter; Kayla shall have parenting time with [Daughter] beginning August 5, 2018 at 4:00 pm until August 12, 2018 at 4 pm

and every other week thereafter." The agreement also provided for alternate holiday parenting time.

It is undisputed that Son accompanied Daughter during parenting time with Kyle and there is no evidence that parenting time did not follow the schedule set forth in the settlement agreement. This equal timesharing situation continued for over three years, from August 2018 until November 20, 2021, when Kayla decided Son would no longer accompany Daughter to stay with Kyle. Kyle filed his petition for custody on January 13, 2022. Thus, in the year immediately preceding the commencement of the custody action, he performed traditional parental responsibilities on an equal timesharing basis with Kayla for at least six months.

The circuit court held that Kyle did not have standing because he could not establish that he had physical custody of Son for a period of six consecutive months. This conclusion may be based on a misapprehension that the term "physical custody" in KRS 403.800(13) means exclusive care and exclusive supervision. Obviously, if Kyle had shown he had exclusive care and supervision of Son for six continuous months, he could have qualified as a *de facto* custodian under KRS 403.270. The circuit court's determination that Kyle lacked standing to bring his petition for custody is erroneous as a matter of law.

-8-

**ii. The circuit court's findings are not sufficient to support its conclusion that Kayla did not waive her superior right to custody**

Curiously, rather than dismissing the petition upon determining that Kyle lacked standing, the circuit court addressed whether Kayla had waived her superior right to custody.

When a nonparent like Kyle, who has standing but does not qualify as a *de facto* custodian, wishes to be placed on an equal footing with a parent for purposes of seeking custody, he "must prove one of two exceptions to a parent's superior right to custody: (1) that the parent is unfit; or (2) that the parent has waived his or her superior rights." *J.S.B.*, 630 S.W.3d at 701 (citations omitted). There was no allegation that Kayla is an unfit parent and consequently this action focused on whether Kayla had waived her superior parental rights. "Parental waiver . . . must be demonstrated by clear and convincing evidence." *Id.* (citations omitted).

As with standing, the standard for parental waiver has been modified to recognize familial relationships in which individuals co-parent children. In *Mullins*, *supra*, the Kentucky Supreme Court "unequivocally relaxed the previously stringent standard regarding what may constitute parental waiver. It held, as a matter of first impression, that waiver can and should apply in certain situations where a child has not been 'fully surrendered' to a nonparent[.]" *J.S.B.*, 630 S.W.3d at 703. It stated:

-9-

we adjudge that there can be a waiver of some part of custody rights demonstrating an intent to co-parent a child with a nonparent. We see no reason why the law of waiver of custody rights should apply only to the full surrender of the child to the nonparent, to the exclusion of a waiver of some part of the superior parental right, which would essentially give the child another parent in addition to the natural parent.

*Id.* (quoting *Mullins*, 317 S.W.3d at 579).

"Unsurprisingly, the rationale behind this new doctrine of 'partial waiver' was grounded on what is best for the child at issue in a custody case." *Id.* Specifically, the Court reasoned:

[t]he recognition of the applicability of the doctrine of waiver in a child custody situation is legally justified as well as necessary in order to prevent the harm that inevitably results from the destruction of the bond that develops between the child and the nonparent who has raised the child as his or her own. The bond between a child and a co-parenting partner who is looked upon as another parent by the child cannot be said to be any less than the bond that develops between the child and a nonparent to whom the parent has relinquished full custody.

*Id.* (quoting *Mullins*, *supra*).

The Kentucky Supreme Court has directed the family and circuit courts to consider the following factors, adopted from *Heatzig v. MacLean*, 191 N.C. App. 451, 664 S.E.2d 347 (2008), to determine "whether the legal parent has voluntarily chosen to create a family unit and to cede to the third party a

-10-

sufficiently significant amount of parental responsibility and decision-making authority to create a parent-like relationship with his or her child":

> (1) both plaintiff and defendant jointly decided to create a family unit; (2) defendant intentionally identified plaintiff as parent; (3) the sperm donor was selected based upon physical characteristics similar to those of plaintiff; (4) the surname of plaintiff was used as one of the child's names; (5) plaintiff participated in the pregnancy and the birth of the child; (6) there was a baptism ceremony where both plaintiff and defendant were identified as parents; (7) plaintiff was identified as a parent on school forms; (8) they functioned together as a family unit for four years; (9) after the relationship between plaintiff and defendant ended, the defendant allowed plaintiff the functional equivalent of custody for three years; (10) defendant encouraged, fostered, and facilitated an emotional and psychological bond between plaintiff and the child; (11) plaintiff provided care and financial support for the child; (12) the child considered plaintiff to be a parent; (13) plaintiff and defendant shared decision-making authority with respect to the child; (14) plaintiff was a medical power of attorney for the child; (15) the parties voluntarily entered into a parenting agreement; and (16) defendant intended to create between plaintiff and the child a permanent parent-like relationship.

*Mullins*, 317 S.W.3d at 580 (citing *Heatzig*, 664 S.E.2d at 353-54); *J.S.B.*, 630 S.W.3d at 704.

Kyle argues that Kayla's actions met many of the factors listed above, contending that he and Kayla decided to create a family unit when Son was eleven months old, prior to the birth of Daughter; Kayla led Son to believe Kyle was his real father; Kayla changed Son's last name to Link; Kayla identified Kyle as Son's

parent on school and medical forms; they functioned as a family unit for approximately nine years, the major part of Son's life; after the relationship between Kyle and Kayla ended, Kayla allowed Kyle the functional equivalent of custody, with Son spending every other week with Kyle for over three years; Kyle cared for and provided financial support for Son; and Son believed Kyle was his biological father, even after the divorce.

The circuit court mistakenly based its finding that Kyle had not proved waiver on the fact that, unlike in *Mullins*, there was no written agreement granting Kyle any form of custody of Son and on Kayla's refusal to allow Kyle to adopt Son prior to their separation. Significantly, *Mullins* does not require such an agreement to support a finding of partial waiver. The court also noted that Kyle knew that Son was not his biological child and that their relationship was essentially one of a stepparent and child. Under this reasoning, however, a same-sex partner such as the appellant in *Mullins* could never establish waiver.

The circuit court also relied considerably on the testimony of Kayla's fiancé, James House, who began a relationship with Kayla in 2018 and currently lives with Kayla and Son. House described himself as a mentor, teacher, and confidant of Son and opined that Son was unaffected by learning that Kyle was not his biological father and further opined that he saw a significant, positive change in Son after Kayla stopped his contact with Kyle.

We fully recognize that "[r]egardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (internal quotation marks and citations omitted). The problem in this case is that the circuit court did not apply the correct legal standard in making its findings. Its findings do not appear to recognize the doctrine of partial waiver established in *Mullins* and restated in *J.S.B.*, nor do its findings reflect a consideration of the *Heatzig* factors.

The evidence that Kayla waived her superior custody rights is considerable, but this Court is well aware that it is not the finder of fact. Consequently, the order denying Kyle's petition for custody must be vacated and the matter remanded for the circuit court to make written findings in accordance with *Mullins*, *J.S.B.*, and *Heatzig* as they are discussed above.

**iii. The circuit court correctly ruled that the doctrine of equitable estoppel does not apply**

Kyle further argues that the circuit court erred in ruling that equitable estoppel did not apply because neither party misled the other about Son's paternity. The doctrine of equitable estoppel is predicated upon the theory that

-13-

> [w]here one has, by a course of conduct, with a full knowledge of the facts with reference to a particular right or title, induced another, in reliance upon such course of conduct, to act to his detriment, he will not thereafter be permitted in equity to assume a position or assert a title inconsistent with such course of conduct, and if he does he will be estopped to thus take advantage of his own wrong.

*S.R.D. v. T.L.B.*, 174 S.W.3d 502, 506 (Ky. App. 2005).

> The elements of an estoppel claim consist of the following:
>
> (1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied on this conduct to his detriment.

*Id.*

Kyle argues that he and Kayla made a material representation to Son that Kyle was his biological father. He contends that Son relied on this representation to his detriment and prejudice and is now cut off from emotional and financial support from Kyle. However, Kyle cannot raise such a claim on Son's behalf, particularly as he, along with Kayla, was complicit in the deception. The circuit court did not err in ruling that equitable estoppel did not apply to the facts of this case.

-14-

**iv. The restraining order must be vacated because it is ambiguous and overbroad**

On June 6, 2023, after the entry of the circuit court's order denying Kyle's petition for custody and while Kyle's CR 59.05 motion was pending, Kayla filed a motion seeking a restraining order and temporary injunction. The motion sought to prevent Kyle from contacting and harassing Kayla and Son by text message, social media, Facebook, through third persons, through communications media, or in person. It also requested that Kyle be prevented from posting anything about Kayla, Son, or the court proceedings on any social media or other form of communication. The circuit court held a brief hearing on the motion on July 7, 2023. It scheduled an evidentiary hearing and entered a temporary order stating that Kyle "shall have no intentional contact or communication with the child . . . until the evidentiary hearing is held[.]"

Following that hearing, which addressed both the CR 59.05 motion and the motion for a restraining order and temporary injunction, the circuit court granted Kayla's motion and entered an order styled "restraining order" simultaneously with the order denying Kyle's CR 59.05 motion.

The restraining order found that after April 25, 2023, the date of the order dismissing Kyle's petition for custody, Kyle continued to have contact with Son at sports activities and school activities. He also continued to send text messages to Son and used various phone numbers to deceive Son into reading the

-15-

messages. Kayla testified that she and Son both asked Kyle to stop communicating but he did not comply until July 7, 2023, when the court entered the temporary order directing him to cease all communication with Son pending a hearing. The circuit court found that Kyle's behavior had caused irreparable harm to Son and would continue to do so without a restraining order. The court also found that Kayla's rights as a parent had been impeded. The order restrains Kyle from communicating with Kayla regarding Son and from contacting Son by text message, social medical, Facebook, through third persons, or by coming around Son. It restrains Kyle from attending wrestling practices and matches involving Son or other school activities which Son may attend. Kyle is restrained from posting on social media or "other form of communication" any pictures or matters regarding Son or any information regarding the court proceedings. He was also directed to remove a purported social media site entitled "[Son's] Dad Link" or any other social media site regarding Son or the court proceedings. Kyle is permitted to attend events involving Daughter if Son is present, but he must refrain from communication with him at these events.

Kyle argues that the restraining order was an abuse of discretion on the following grounds: (1) that it was procedurally improper for failing to comply with CR 65.05, which requires the applicant for a restraining order or temporary injunction to give a bond; (2) that there was no clear showing of immediate and

-16-

irreparable injury or findings to support such a showing; (3) that the order was a prior restraint on speech which violates the First Amendment of the United States Constitution and Section Eight of the Kentucky Constitution; and (4) that the order did not have a termination date as required by CR 65.03, the Civil Rule governing restraining orders.

"Restraining orders, temporary injunctions and permanent injunctions as set forth in CR 65 are an extraordinary equitable remedy. As a class, these injunctions have been described as summary peculiar and extraordinary, and ought not to be issued except for great and irreparable mischief." *Commonwealth v. Mountain Truckers Ass'n, Inc.*, 683 S.W.2d 260, 263 (Ky. App. 1984) (internal quotation marks and citations omitted). The circuit court's grant of injunctive relief is reviewed for abuse of discretion. *Maupin v. Stansbury*, 575 S.W.2d 695, 697-98 (Ky. App. 1978).

Although the circuit court's order is styled a "restraining order," and it twice states that "no other avenue is available" except "a restraining order," the order does not comply with CR 65.03. Restraining orders "are ordinarily granted without notice to the defendant who therefore has not had the opportunity to attack the plaintiff's claim." *Mountain Truckers Ass'n, Inc.*, 683 S.W.2d at 263 (internal quotation marks and citations omitted). CR 65.03(1) permits a restraining order to be granted at the commencement or during the pendency of an action without

-17-

written or oral notice to the adverse party and it remains in force "until, and not after, (a) the time set for a hearing on a motion to dissolve the restraining order unless there is then pending a motion for a temporary injunction, or (b) the entry of an order on a motion for a temporary injunction, or (c) the entry of a final judgment, whichever is earlier." CR 65.03(5).

> CR 65.04 permits a temporary injunction to be
>
> granted during the pendency of an action on motion if it is clearly shown by verified complaint, affidavit, or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss, or damage pending a final judgment in the action, or the acts of the adverse party will tend to render such final judgment ineffectual.

CR 65.04(1).

"Notably, a motion for a temporary injunction does not call for, or justify, an adjudication of the ultimate rights of the parties . . . and should issue only where it is clearly shown that one's rights will suffer immediate and irreparable injury pending trial." *Cameron v. EMW Women's Surgical Center, P.S.C.*, 664 S.W.3d 633, 659-60 (Ky. 2023).

Thus, our case law and our civil rules specify that restraining orders and temporary injunctions are extraordinary equitable remedies entered during the pendency of the action upon a showing of impending immediate and irreparable injury. But the restraining order in this case was entered after the entry of the final

judgment and the denial of the CR 59.05 motion. The order has no termination date, and contains very broad restrictions on Kyle's actions, including future restraints on expression on many subjects and in many formats. "Any prior restraint on expression comes . . . with a heavy presumption against its constitutional validity." *Hill v. Petrotech Resources Corp*., 325 S.W.3d 302, 303-04 (Ky. 2020) (internal quotation marks omitted). The restraining order is therefore vacated because it is unclear whether it was intended to be some form of permanent injunction; its temporal scope is not specified; and its future restraints on expression are broad enough to implicate Kyle's free speech rights.

## CONCLUSION

For the foregoing reasons, the restraining order is vacated. Additionally, the circuit court's order dismissing Kyle's petition for custody is vacated and the matter is remanded for the circuit court to make further findings of fact and conclusions of law in accordance with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Charles D. Brown, Jr.
Abby L. Braune
Louisville, Kentucky

BRIEF FOR APPELLEE:

Lyn Taylor Long
Elizabethtown, Kentucky

-19-