An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-840

Filed 20 August 2025

Lee County, No. 23CV001251-520

DEBORAH BARBER and DWAYNE BARBER, Plaintiffs,

v.

DANIELLE DRIGGERS and JAMES EDWARD MOORE, Defendants.

Appeal by defendant-appellant-mother from temporary and permanent custody orders entered 8 February 2024 and 24 April 2024 by Judge Jason H. Coats in Lee County District Court. Heard in the Court of Appeals 24 April 2025.

> *Hayes Law Offices, PLLC, by Mark L. Hayes, and Ellis Law Office, by Amber Ellis, for plaintiffs-appellees.*
>
> *Danielle Driggers, pro se, defendant-appellant-mother.*
>
> *James Edward Moore, pro se, defendant-father. No brief filed.*

GORE, Judge.

Defendant-mother Danielle Driggers appeals the temporary custody order and permanent custody order awarding the primary custody of MM and WM to plaintiffs and awarding visitation rights to her. Upon review of the briefs and the record, we affirm.

**I.**

MM and WM are the minor children of defendant-mother and defendant-father. Defendant-mother was in an abusive relationship with defendant-father for seven years. Defendant-mother has two older children of whom she lost custody due to the abusive relationship with defendant-father and charges of child abuse against the older children. Defendant-mother obtained a domestic violence protective order ("DVPO") against defendant-father in 2020 but reconciled with him and dismissed the DVPO. In May 2022, defendant-mother took MM and moved in with plaintiffs when defendant-father threatened to kill her while she was pregnant with WM. Defendant-mother took out another DVPO against defendant-father and renewed the DVPO upon its expiration.

Defendant-mother and MM moved in with plaintiffs while she was pregnant with WM. Plaintiff Deborah Barber was the stepmother of defendant-mother growing up until defendant-mother's biological father and plaintiff Deborah divorced. Defendant-mother cared for her children when she first lived with plaintiffs but quit assisting with most childrearing responsibilities after a couple months. Plaintiffs took on the primary roles of feeding, bathing, and daily caring for MM and WM, and kept WM in their room for overnight feedings. Plaintiffs also provided for the children's educational and financial needs. Defendant-mother spent some of her days in her bedroom while the children were watched by plaintiffs.

Defendant-mother communicated with defendant-father through email, while living with plaintiffs, despite the existing DVPO. She told plaintiff-Deborah she wanted her kids to have a father, "whether he was abusive or not." Plaintiffs and their teenage granddaughter testified that they witnessed defendant-mother hitting MM on the back of the head and cursing at her multiple times while living with them. Plaintiffs became concerned defendant-mother would return to the abusive relationship because of her contact with defendant-father. Additionally, defendant-father made a threatening phone call to plaintiffs while defendant-mother and the children were living with them.

Plaintiffs sought and obtained a temporary custody order for MM and WM with visitation rights awarded to defendant-mother; defendant-mother moved out (defendant-mother testified she was forced to leave the home). Defendant-mother moved in with a new boyfriend and after ending that relationship, she lived in the home of her ex-boyfriend's father until she rented her own home.

Defendant-mother moved into her own home located less than one mile from defendant-father's home. Defendant-mother maintained her job at a restaurant and purchased a vehicle from plaintiffs after obtaining her driver's license. The temporary custody order provided visitation rights to defendant-mother after school two days a week and when mutually agreed upon by her and plaintiffs. Plaintiffs would not allow her to take the children for overnight visitation and defendant-mother would not go to plaintiffs' home to visit the children after she moved out.

Defendant-mother provided little financial support prior to the temporary custody award and no financial support after it was entered.

After a permanent custody hearing, the trial court entered a permanent custody order awarding primary physical and legal custody of MM and WM to plaintiffs with visitation rights to defendant-mother. Defendant-mother timely appealed the temporary and permanent custody orders.

**II.**

Defendant-mother appeals of right pursuant to N.C.G.S. § 7A-27(b)(2). Defendant-mother argues the trial court erred by concluding it was in the best interests of the juveniles to award permanent custody with plaintiffs. Defendant-mother argues the trial court lacked clear, cogent, and convincing evidence to conclude she acted in a manner inconsistent with her constitutionally protected status as a parent. Defendant-mother specifically challenges the following findings of fact: 8, 11, 13, 16, 17, 18, 21, 22, 27, 28, 29, 35, 37, 40, and 43.

We generally review child custody orders for abuse of discretion. "The decision of the trial judge regarding custody will not be upset on appeal absent a clear showing of abuse of discretion, provided that the decision is based on proper findings of fact supported by competent evidence." *Jordan v. Jordan*, 162 N.C. App. 112, 116–17 (2004) (citation omitted). We review challenged findings of fact to determine "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Scoggin v.*

*Scoggin*, 250 N.C. App. 115, 117–18 (2016) (citations omitted). "Unchallenged findings . . . are binding on appeal." *Id.* at 118 (citations omitted). "If the trial court's uncontested findings support its conclusions of law, we must affirm the trial court's order." *Id.* (cleaned up). The trial court's conclusion regarding the fitness of a parent must be supported by clear and convincing evidence. *Owenby v. Young*, 357 N.C. 142, 148 (2003).

Importantly, we afford broad discretion to the trial court because of "the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges." *Martin v. Martin*, 167 N.C. App. 365, 367 (2004) (citations omitted). Accordingly, we consider defendant-mother's arguments within this standard of review.

## A.

Defendant-mother challenges multiple findings of fact by arguing there is no competent evidence to support the findings. The trial court included forty-three findings of fact, and defendant-mother challenges fourteen of those findings. Of the multiple challenged findings, we consider the following:

16. Defendants James Edward Moore and Danielle Driggers have been in an on-again-off-again relationship for the last seven years. Approximately twice, Defendant-[mother] filed a Complaint for a Domestic Violence Protective Order ["DVPO"] against Defendant-[father]. She is currently protected by a [DVPO] in Harnett County File No. 22 CVD 1026 which expires on June 7, 2023. The Defendant-

[mother] says she renewed the order, but no such order was provided to the [c]ourt.

17. Despite seeking court orders for protection from domestic violence, Defendant-[mother] is known to reinstate her relationship with Defendant-[father] on more than one occasion.

18. While living with the Plaintiffs, Defendant-[mother] had contact with Defendant-[father], despite the [DVPO].

. . .

21. At the time of this hearing, of all the places she could have chosen to live, Defendant-[mother] chose to move and lives in a rental property approximately one mile from Defendant-[father]'s residence.

. . .

27. Defendant-[mother] provided little to no daily care for the minor children even when there was time and opportunity for her to provide care while living with the Plaintiffs.

. . .

29. The Defendant-[mother] could have stayed in the Plaintiffs' home with the children to get herself more stable, but she moved out to live with a new boyfriend instead and when that relationship ended, she lived with that boyfriend's father for a period of time.

. . .

35. Both Plaintiffs have a relationship in the nature of a parent-child relationship with each minor child in that they provide all of the children's daily care including feeding, bathing, emotional support, educational needs and financial needs.

. . .

40. The court finds by clear, cogent and convincing evidence that Defendant-[mother] acted inconsistent with her constitutionally protected status as a natural parent. She has chosen a relationship with the Defendant-[father] despite having lost custody of two other children due, at least in part, to her relationship and contact with Defendant-[father].

. . .

43. The Order below for custody and visitation is in the best interests of the children.

Defendant-mother argues she did provide the court with a renewed DVPO and only challenges that portion of finding No. 16. The record does include a renewed DVPO in Harnett County with an expiration date of 23 June 2024 that defendant-mother admitted into evidence during the hearing. Accordingly, we set aside the portion of the finding that states she did not provide a renewal of the DVPO to the court. The remainder of the finding is unchallenged and there is competent evidence in the record to support it.

Defendant-mother argues there was only one occasion that she set aside a DVPO and reconciled with defendant-father and therefore finding No. 17 is unsupported because the record is devoid of any evidence of other occasions. However, plaintiffs testified that defendant-mother was exchanging emails with defendant-father while residing with them and while the DVPO was in effect. Defendant-mother testified she left defendant-father three times. Additionally, defendant-mother told plaintiffs she did not want her children to be without a father "whether he was abusive or not." Further, the record indicates defendant-mother has two older children of whom she lost custody after child abuse allegations against her and defendant-father. Such history contradicts defendant-mother's argument that plaintiffs' fears are irrational, as does the testimony that defendant-father made a threatening phone call to plaintiffs while defendant-mother and the minor children

were residing with them. Accordingly, there is competent evidence in the record to support this finding.

Defendant-mother argues finding No. 18 is unsupported because she did not have another intimate relationship with defendant-father after she left him and moved in with plaintiffs. This finding of fact does not specify any romantic relationship but instead focuses on whether she has had any contact with him. As previously discussed, there is record evidence that defendant-mother had contact with defendant-father through emails after moving in with plaintiffs. There is competent evidence to support this finding of fact.

Defendant-mother challenges finding No. 21 with arguments that merely seek to cast doubt upon the finding without negating its validity. Defendant-mother challenges the timing defendant-father lived near her rental property, and the timing when she told plaintiff Deborah where defendant-father lived. This does not negate that she chose and moved into a rental property that was close to defendant-father's residence. Further there is testimony in the record that was not challenged during the hearing that she lives one mile from defendant-father. Accordingly, this challenge is without merit.

Defendant-mother challenges finding No. 27 by arguing she helped with schoolwork, prepared meals, attended doctor appointments, arranged and paid for WM's daycare, and took the children on dinner outings. However, there is evidence in the record that she helped with one meal, that she did not change diapers, or help

with the daily care of the children, but would instead stay in her room when she was not working and while the kids were with plaintiffs in the main living space. Additionally, there is evidence that WM spent nights with plaintiffs ninety-five percent of the time. There is competent evidence in the record to support this finding, therefore, this challenge is without merit. *See Burger v. Smith*, 243 N.C. App. 233, 236 (2015) (citation omitted) ("The trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings.").

Defendant argues there is no evidence to support finding No. 29. Instead, she argues that plaintiffs kicked her out upon the filing of the ex parte motion for temporary custody. While there is evidence in the record that suggests plaintiffs could have kicked defendant-mother out of the house, there is also evidence in the record to support the finding that defendant-mother moved out to live with a new boyfriend. As previously stated, if there is evidence in the record to support the finding, it is considered conclusive even if there is contradictory evidence. *Burger*, 243 N.C. App. at 236. Accordingly, there is evidence in the record to support this finding; defendant-mother's challenge is overruled.

Defendant-mother challenges finding No. 35 by arguing she participated in multiple aspects of the children's daily life. But she does not negate the finding itself that plaintiffs provide for all the children's daily care including feeding, bathing,

emotional support, educational needs, and financial needs. There is competent evidence in the record to support this finding, therefore her challenge is overruled.

Defendant argues that the trial court lacked clear, cogent, and convincing evidence to support finding No. 40 that she chose a relationship with defendant-father, and because the evidence is lacking, the trial court erred in applying the best interest of the children standard. However, the record includes evidence that she did choose a relationship with defendant-father despite losing custody of her two older children to the paternal grandfather of those children. Further, there is record evidence she communicated further with defendant-father after obtaining a DVPO against him and moving in with plaintiffs. Accordingly, defendant-mother's challenge to that portion of finding No. 40 is overruled.

Defendant-mother challenges finding No. 43 by arguing plaintiffs failed to meet their burden of proof that defendant-mother acted inconsistently with her parental rights. Under this premise, defendant-mother argues the trial court erred by using the best interest analysis. She provides evidence based upon MM's therapy notes to suggest MM wanted to be with her mother and "reported concerning events that would take place in plaintiffs' home." Defendant-mother points to her perspective of facts in the record such as plaintiffs' refusal "to accept any statement of facts inconsistent with their unfounded belief that defendant-mother would never be able to free herself of defendant-[father]," that defendant-mother was evicted from plaintiffs' home; that plaintiff's consistently denied her requests for more

participation in the children's lives; and to the various temporary court orders resolving visitation and custody issues pending the permanent custody hearing.

However, there is record evidence to support this finding, namely defendant-mother's treatment of MM while living with plaintiffs. The uncontested finding No. 24 is well supported in the record. Plaintiffs and their teenage granddaughter testified they saw defendant-mother strike MM angrily and forcefully on the head multiple times. The trial court also included findings that plaintiffs care for the needs of MM and WM on a daily basis, and as previously discussed, we determine the trial court's findings 25, 26, 35, 36, and 37 are supported by competent evidence and in turn support this finding that the Order below is in the best interest of the children.

Having considered the contested findings that support the trial court's conclusion of law that defendant-mother acted inconsistently with her constitutionally protected parental rights, we determine those findings were supported by competent evidence. Accordingly, those findings are conclusive, and we now consider whether the trial court erred as a matter of law in determining defendant-mother acted in a manner inconsistent with her constitutionally protected status as a natural parent.

**B.**

Defendant-mother argues that the conclusion of law in finding No. 40 that she acted in a manner inconsistent with her constitutionally protected rights, is unsupported by the findings of fact. We disagree.

> If a legal parent (biological or adoptive) acts in a manner inconsistent with his or her [constitutionally protected] status, the parent may forfeit this paramount status, and the application of the best interest of the child standard in a custody dispute with a non-parent would not offend the Due Process Clause. . . . [T]he determination of whether a parent has acted in a manner inconsistent with his or her constitutionally protected status must be made on a case-by-case basis. . . . [T]his Court emphasized that both conduct and intent are relevant in making this determination.

*Heatzig v. MacLean*, 191 N.C. App. 451, 454–55 (2008) (internal quotation marks and citations omitted). "The law presumes that parents will perform their obligations to their children and therefore presumes their right to custody. A parent's right to custody, however, is not an absolute right. *When a parent neglects the welfare and interest of his child, he waives his usual right to custody.*" *Sharp v. Sharp*, 124 N.C. App. 357, 360 (1996) (internal quotation marks and citations omitted).

In the present case, the trial court included the following unchallenged findings that support the trial court's conclusion as to defendant-mother's inconsistent actions with her constitutionally protected status:

12. Defendant-[mother] is employed at a local restaurant and per the owner of the restaurant where she is employed, she is a very good employee. He provides a flexible schedule for her to spend time with her children.
. . .

19. At the time of the temporary order, Defendant-[mother] indicated she may reside with a new boyfriend, who is unknown to the minor children.

24. Plaintiffs have witnessed Defendant-mother physically striking the minor child [MM] with an unreasonable amount of force. Defendant-

[mother] denies striking the minor child [MM] out of anger, but indicated she did so in a playful manner.

. . .

25. Plaintiffs are capable and willing to care for the minor children and have so cared for the minor children on a daily basis since approximately May 2022.

26. Plaintiffs have provided day-to-day care since May 2022 for the minor child [MM] and since the day of birth for the minor child [WM]. Plaintiffs provide daily care, oversee educational needs and financial needs of the minor children.

These findings along with the previously discussed challenged findings demonstrate defendant-mother acted in a way that was inconsistent with her constitutionally protected parental status. Further, the trial court's findings demonstrate defendant-mother relinquished her parental duties by having plaintiffs assume responsibility for the children's daily care, oversight of educational needs, financial needs, feeding, bathing, and providing for their emotional needs. The trial court's findings of fact support the conclusion of law that defendant-mother acted in a manner inconsistent with her constitutionally protected parental rights. Accordingly, the trial court did not err in determining defendant-mother acted in a manner inconsistent with her constitutionally protected status.

Having determined the trial court did not err in concluding defendant-mother acted inconsistently with her constitutionally protected parental status, we consider whether the trial court abused its discretion by determining it was in the best interests of the children to enter a permanent custody order awarding primary

custody to plaintiffs. The trial court included the following findings related to plaintiffs:

> 8. The Plaintiffs . . . home is a proper and safe home for the minor children.
>
> . . .
>
> 25. Plaintiffs are capable and willing to care for the minor children and have so cared for the minor children on a daily basis since approximately May 2022.
>
> 26. Plaintiffs have provided day to day care since May 2022 for the minor child [MM] and since the day of birth for the minor child [WM]. Plaintiffs provide daily care, oversee educational needs and financial needs of the minor children.
>
> . . .
>
> 35. Both Plaintiffs have a relationship in the nature of a parent-child relationship with each minor child in that they provide all of the children's daily care including feeding, bathing, emotional support, educational needs and financial needs.
>
> 36. Both Plaintiffs have a close and loving relationship with the minor children.
>
> 37. The court finds that the Plaintiffs have a genuine interest in the welfare of the children and a genuine concern for the care, welfare, and stability of Defendant-[mother]. However, their priority is for the care of these children and the court accredits the priority Plaintiffs give to the welfare of the children.
>
> . . .
>
> 42. Both Plaintiffs are fit and proper persons to have the care, custody, and control of the minor children.

These findings support the trial court's conclusion that it was in the best interest of the children to award primary custody to plaintiffs. Accordingly, we discern no abuse of discretion.

## III.

For the foregoing reasons, we affirm the trial court's custody orders.


AFFIRMED.

Judges CARPENTER and FLOOD concur.

Report per Rule 30(e).